**McGUIREWOODS LLP**
Mark A. Platt
Texas Bar No. 00791453
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Telephone: (214) 932-6433
Email: mplatt@mcguirewoods.com
-and-
Joseph S. Sheerin (not admitted in TX)
Gateway Plaza, 800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1135
Email: jsheerin@mcguirewoods.com

*Counsel to Anthem Inc. and Affiliates*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re:<br><br>VICTORY MEDICAL CENTER MID-CITIES, LP *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-42373-rfn-11 |

### OBJECTION OF ANTHEM INC. AND AFFILIATES TO FIRST AND SECOND MOTIONS OF THE GRANTOR TRUSTEE FOR AUTHORITY TO CONDUCT RULE 2004 EXAMINATIONS OF CERTAIN ERISA PLAN SPONSORS AND THEIR THIRD PARTY ADMINISTRATORS AND FOR THE PRODUCTION OF DOCUMENTS

Anthem Inc. and its affiliated entities (collectively, "Anthem"[1]), by undersigned counsel,

submits this Objection (the "Objection") to the *First and Second Motions of the Grantor Trustee*

---

[1] The Rule 2004 Motions (as defined herein) identify various entities that may be affiliated with Anthem, including without limitation "Anthem Blue Cross National Accounts", "Anthem Blue Cross" of California, Colorado, Connecticut, Georgia, Indiana, Kentucky, Missouri, Nevada, and Wisconsin, "Empire Blue Cross" and "Blue Cross" of California, Colorado, Connecticut, Georgia, Indiana, Missouri, New York, Ohio, and Virginia. Because the 2004 Motions fail to utilize proper legal names for potential witnesses, Anthem is unable to confirm the identity of all Anthem-related entities named in the Rule 2004 Motions. By objecting herein, Anthem does not consent to service of any subpoena on itself or any of its affiliated entities and does not waive any objection relating to the Trustee's failure to properly identify any particular Anthem entity.

1

*for Authority to Conduct Rule 2004 Examinations of Certain ERISA Plan Sponsors and Their Third Party Administrators and For the Production of Documents* [Docket Nos. 1193 and 1194 (the "Rule 2004 Motions"). In support of its Objection, Anthem respectfully states as follows:

## BACKGROUND

1.      On June 12, 2015, the above-captioned debtors (the "Debtors") filed voluntary petitions for relief in this Court under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

2.      On February 12, 2016, the Debtors filed their First Amended Joint Plan of Reorganization [Doc. No. 776] (as modified, the "Plan").

3.      The Court confirmed the Plan on March 28, 2016. [Doc. No. 969]

4.      The Plan became effective on May 11, 2016 and the Debtors' assets and liabilities were transferred into trusts to be administered by the Trustee.

5.      According to the Rule 2004 Motions, the Trustee believes that the Debtors have certain accounts receivable that remain underpaid or unpaid with regard to healthcare services provided by the Debtors (collectively, the "Accounts Receivable"). The Trustee specifically asserts that the Accounts Receivable were unpaid or underpaid by third party administrators ("TPAs") on behalf of employers (the "Plan Sponsors") sponsoring ERISA health benefits plans ("ERISA Plans").

6.      The Rule 2004 Motions seek permission to issue subpoenas not only upon the TPAs allegedly responsible for the underpayment or nonpayment of the Accounts Receivable, but also upon the third-party entities who happened to sponsor the ERISA Plans at issue.

**OBJECTION**

7.      Anthem objects to the Rule 2004 Motions on several grounds.  First, the Rule

2004 Motions seek authority to issue subpoenas to a list of hundreds of targets that has not been

narrowed by any meaningful or reasonable measure.  Moreover, the substance to which these

entities are expected to provide documents and testimony exceeds any permissible scope and

would subject them to significant hardship and expense, as well as legal risk regarding disclosure

of confidential protected health information ("PHI").  Furthermore, the Trustee lacks standing to

pursue some or all of the claims alluded to in the Rule 2004 Motions against the Witnesses

named therein, and there can be no basis to take pre-complaint discovery regarding claims that

are not cognizable.  Finally, the Rule 2004 Motions fail to set forth any reasonable procedural

framework that would ensure the orderly administration of the examinations, should this Court

be inclined to permit any of them to go forward.

**The Rule 2004 Motions Are Overbroad**

8.      First, the Rule 2004 Motions are vastly overly broad with respect to the

"Witnesses" they target.  The Trustee seeks to examine not only the insurers and TPAs who were

in direct contact with the Debtors, but also the third party Plan Sponsors.  (*See* Rule 2004

Motion, ¶¶ 4-7.)  However, the Plan Sponsors themselves would not have been involved in the

alleged nonpayment or underpayment of the Accounts Receivables, as the administration of

payments is generally handled by the TPAs and other payers.  To the extent information

regarding the terms of the ERISA Plans is relevant to the Trustee's inquiry, any such information

can and should be gleaned from the TPAs and payers themselves before resorting to issuing

hundreds of subpoenas seeking PHI from Plan Sponsors that likely do not even possess relevant

information. There is simply no reason to subject hundreds of Plan Sponsors, who are otherwise entirely disinterested from this process, to invasive and costly examinations.

9.      In fact, Anthem has already fielded queries from Plan Sponsors that have been served with the Rule 2004 Motions. These Plan Sponsors do not understand what relevant information they would be able to provide or how their businesses would be impacted by the Trustee's examinations.[2] The Trustee has provided no justification for including these Plan Sponsors as targets in the Rule 2004 Motions as they are not likely to have any unique relevant information. Moreover, a narrowing of the list of Witnesses by reasonably excluding the Plan Sponsors that likely do not possess relevant information would allow the Trustee to comply with the local procedural requirements, which as discussed below, have not been followed.

10.      Furthermore, the Rule 2004 Motions fail to include any meaningful limit on the substantive scope of the proposed examinations. (*See* Rule 2004 Motion, ¶ 11.) As proposed, the Trustee would have blanket authority to issue document and deposition subpoenas to hundreds of parties seeking virtually any conceivable type of information. The unfettered scope of the Trustee's request imposes enormous burdens on the TPAs and Plan Sponsors and creates unique issues in light of the request for PHI that is subject to the Health Insurance Portability and Accountability Act ("HIPAA"). To the extent the Court approves the Rule 2004 Motions in any respect, the scope of the authorized discovery should be narrowly tailored to ensure the Trustee's discovery requests are not unnecessarily burdensome and limit the risk of disclosure of PHI that falls under HIPAA.

---

[2]      Adding to the confusion of Plan Sponsors, the Rule 2004 Motions, which were served on hundreds of targets with no prior involvement in the Debtors' bankruptcy cases, failed to specify any response deadline or to give negative notice to parties served with the Rule 2004 Motions that failure to object may result in entry of the proposed order granting the Rule 2004 Motions. The Trustee's failure to provide negative notice in accordance with L.B.R. 9007-1 may alone warrant denial of the Rule 2004 Motions.

11.     In support of the Rule 2004 Motions, the Trustee cites the doctrine that so-called "fishing expeditions" are permitted under Rule 2004. (*See* Rule 2004 Motion, ¶ 12, citing *In re Countrywide Home Loans*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008)). Yet, the Court in *In re Countrywide* also goes on to say that Rule 2004 "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *Countrywide Home Loans*, 384 B.R. at 393-394. The scope of a Rule 2004 examination is not limitless. *In re Buccaneer Res.*, LLC, 2015 Bankr. LEXIS 4203 (Bankr. S.D. Tex. Dec. 10, 2015)

12.     In accordance with that doctrine, various courts have held that a party invoking Rule 2004 must show good cause to do so. *See In re Express One Int'l*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) citing *In re Eagle-Picher Industries, Inc.*, 169 B.R. 130, 134 (Bankr.S.D.Ohio.1994). *See also See e.g. In re Drexel Burnham Lambert Group*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); *In re Hammond*, 140 B.R. 197, 202 (S.D. Ohio 1992)

13.     "Generally, good cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner undue hardship or injustice." *Id*. citing *In re Dinubilo*, 177 B.R. 932, 940 (E.D.Cal.1993).

14.     Additionally, "if the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied." *In re Express One Int'l*, 217 B.R. at 217.

15.     Given the burdens and risks that the Trustee seeks to impose upon the TPAs and Plan Sponsors through unfettered, blanket discovery authority, the cost and disruption to the examinees far outweighs any benefits that the Trustee may reasonably expect to enjoy. This is especially true with respect to the Plan Sponsors who typically have no direct relationship with

the Debtors and are not likely to have any unique information relevant to the Trustee's review.

To the extent that examinations of Plan Sponsors could be justified, authority to conduct such

examinations should be given only after the Trustee has exhausted less intrusive and burdensome

options through the TPAs. As to the TPAs, the Court should reject the Trustee's request for

blanket authority to take discovery without any limitation or scope. Given the broad list of

targets and unique HIPAA issues at play, the Trustee should be required to narrowly define the

specific information sought before the Court authorizes any discovery of any party.

**The Trustee Lacks Jurisdiction to Pursue Claims Unrelated to Accounts Receivable**

16.     The Rule 2004 Motions should be denied because the Trustee lacks standing to

pursue claims relevant to the proposed examinations. It is well-established in the Fifth Circuit

that "'[a]fter confirmation of a plan, the ability of the debtor' or its representative 'to enforce a

claim once held by the estate is limited to that which has been retained in the plan.'" *Adler v.

Frost (In re Gulf States Long Term Acute Care of Covington, L.L.C.)*, 614 Fed. Appx. 714, 717

(5th Cir. La. 2015) citing *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating,

LLC)*, 540 F.3d 351 (5th Cir. 2008). "For a debtor to preserve a claim, the plan must expressly

retain the right to pursue such actions. The reservation must be specific and unequivocal. A

blanket reservation of 'any and all claims' is insufficient to preserve the debtor's standing to

sue." *Id*.

17.     Here, the Plan does not specifically identify Anthem as an insurer against which

claims are reserved. Rather, the Plan purports to preserve claims generally against "Blue Cross

Blue Shield (Texas and out of state) and each of its affiliates." [Doc. No. 969, p. 81.] The Plan

does identify certain alleged entities with a partial name of "Anthem" on the list of "providers"

against which the Plan purports to reserve claims for the "[c]ollection of accounts receivable and

any and all related claims cognizable under applicable law." [Doc. No. 969, pp. 87 – 91.] The Plan goes on to attempt to reserve the same claims generally against "all other insurance companies," "[a]ll patients or former patients," and "the employers of such patients or former patients." [Doc. No. 969, p. 82.]

18.    These generalized reservations in the Plan are problematic for the Trustee because the Plan fails to identify any <u>specific</u> claims beyond "collection of the Accounts Receivable." Accordingly, any other claims contemplated by the Trustee have been lost and the scope of any Rule 2004 Examinations should be limited accordingly.

19.    If the Rule 2004 Motions are granted, the relief should be limited in scope to information relevant to the "[c]ollection of accounts receivable" as the Plan fails to even arguably specifically reserve any other claims against Anthem or the Plan Sponsors.[3]

<u>**The Rule 2004 Motions Fail to Comply with L.B.R. 2004-1**</u>

20.    Third, the Trustee has failed to comply with the procedural requirements of L.B.R. 2004-1. Specifically, L.B.R. 2004-1 requires that a party moving for examinations pursuant to Rule 2004 confer with the proposed examinee or its counsel prior to filing.

21.    Here, the Trustee has not done so and explains away his non-compliance by pointing out the impracticality of conferring with hundreds of proposed examinees. (*See* Rule 2004 Motion, ¶¶ 15-16.) Yet, the Trustee ignores the fact that, were the list of proposed examinees not grossly overbroad, he would not be faced with this problem. It is anathema to the spirit of L.B.R. 2004-1 to permit a party to skirt its requirements by failing to exercise judgment as to which parties are legitimately subject to examination.

---

[3]    The Plan's vague reference to patients and employers may not be sufficient to preserve claims against Plan Sponsors under controlling Fifth Circuit law. Nothing herein constitutes an admission as to the adequacy of the Plan's preservation of any claim against Anthem or any Plan Sponsor.

22.     Moreover, the Trustee's inability to comply with L.B.R. 2004-1 merely foreshadows the procedural quagmire into which these proceedings will be thrust if the Rule 2004 Motions are granted.  The Trustee would apparently serve hundreds of subpoenas upon distinct and geographically diverse parties.  Recipients of the subpoenas would then file motions to quash, discovery objections, requests for protective orders and various other responses.  Given the scope and breadth of the Rule 2004 Motions, a framework for ensuring notices of subpoenas and depositions should be established to limit the cost and burden of compliance and so that all interested parties are aware of the proceedings.

23.     Accordingly, to the extent that this Court is inclined to grant the Rule 2004 Motions, even in part, the Trustee should be compelled to (1) comply with the meet and confer requirement of L.B.R. 2004-1, (2) narrowly define the information that may be discoverable to limit burden and potential HIPAA concerns, and (3) establish a discovery protocol by which the Rule 2004 examinations and discovery would be conducted through a reasonable and less burdensome process that is transparent to all stakeholders.

## CONCLUSION

Based on the foregoing, Anthem respectfully requests that the Court (1) deny the Rule 2004 Motions, and (2) grant Anthem such other and further relief that the Court deems just and proper.

DATED: July 12, 2016            Respectfully submitted,

McGUIREWOODS LLP

/s/ *Mark A. Platt*
Mark A. Platt
Texas Bar No. 00791453
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Telephone: (214) 932-6433
Email: mplatt@mcguirewoods.com
-and-
Joseph S. Sheerin (not admitted in TX)
Gateway Plaza, 800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1135
Email: jsheerin@mcguirewoods.com

*Counsel to Anthem Inc. and Affiliates*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Objection was served on all counsel of record herein via the Court's electronic notification system, and via US Mail on the parties listed in Exhibits A and B on the Affidavit of Service entered as Docket No. 1202, on this 12th day of July, 2016.

/s/ *Mark A. Platt*
Mark A. Platt

80253461_1