**LOCKE LORD LLP**
Amanda L. Cottrell
Texas Bar No. 24064972
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: (214) 740-8487
Fax: (214) 756-8487
Email: acottrell@lockelord.com
*Counsel to Baylor Scott & White Health*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>VICTORY MEDICAL CENTER MID-CITIES, LP *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-42373-rfn-11 |

**OBJECTION OF BAYLOR SCOTT & WHITE HEALTH TO FIRST AND SECOND MOTIONS OF THE GRANTOR TRUSTEE FOR AUTHORITY TO CONDUCT RULE 2004 EXAMINATIONS OF CERTAIN ERISA PLAN SPONSORS AND THEIR THIRD PARTY ADMINISTRATORS AND FOR THE PRODUCTION OF DOCUMENTS**

Baylor Scott & White Health, by undersigned counsel, submits this Objection (the "Objection") to the *First and Second Motions of the Grantor Trustee for Authority to Conduct Rule 2004 Examinations of Certain ERISA Plan Sponsors and Their Third Party Administrators and For the Production of Documents* [Docket Nos. 1193 and 1194 (the "Rule 2004 Motions"). In support of its Objection, Baylor Scott & White Health respectfully states as follows:

BACKGROUND

1. On June 12, 2015, the above-captioned debtors (the "Debtors") filed voluntary petitions for relief in this Court under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code").

1

2. On February 12, 2016, the Debtors filed their First Amended Joint Plan of Reorganization [Doc. No. 776] (as modified, the "Plan").

3. The Court confirmed the Plan on March 28, 2016. [Doc. No. 969]

4. The Plan became effective on May 11, 2016 and the Debtors' assets and liabilities were transferred into trusts to be administered by the Trustee.

5. According to the Rule 2004 Motions, the Trustee believes that the Debtors have certain accounts receivable that remain underpaid or unpaid with regard to healthcare services provided by the Debtors (collectively, the "Accounts Receivable"). The Trustee specifically asserts that the Accounts Receivable were unpaid or underpaid by third party administrators ("TPAs") on behalf of employers (the "Plan Sponsors") sponsoring ERISA health benefits plans ("ERISA Plans").

6. The Rule 2004 Motions seek permission to issue subpoenas not only upon the TPAs allegedly responsible for the underpayment or nonpayment of the Accounts Receivable, but also upon the third-party entities who happened to sponsor the ERISA Plans at issue.

## OBJECTION

7. Baylor Scott & White Health objects to the Rule 2004 Motions on several grounds. First, the Rule 2004 Motions seek authority to issue subpoenas to a list of hundreds of targets that has not been narrowed by any meaningful or reasonable measure. Moreover, the substance to which these entities are expected to provide documents and testimony exceeds any permissible scope and would subject them to significant hardship and expense, as well as legal risk regarding disclosure of confidential protected health information and/or personal identifying information (collectively, "PHI"). Furthermore, the Trustee lacks standing to pursue some or all of the claims alluded to in the Rule 2004 Motions against Baylor Scott & White Health and

2

perhaps other Witnesses named therein, and there can be no basis to take pre-complaint discovery regarding claims that are not cognizable. Specifically, the Plan does not expressly retain the right to pursue any such action against Baylor Scott & White Health. Further, it is unclear what information and documentation the Trustee seeks, making it nearly impossible for Baylor Scott & White Health and any other Witness to fully assert its objections. The Rule 2004 Motions also fail to indicate a specific period of time. Depending on the applicable time frame, Baylor Scott & White Health may object that the request is outside the contract period. Baylor Scott & White Health further objects that the Rule 2004 Motions may violate procedures under the ERISA Plans. Finally, the Rule 2004 Motions fail to set forth any reasonable procedural framework that would ensure the orderly administration of the examinations, should this Court be inclined to permit any of them to go forward.

## The Rule 2004 Motions Are Overbroad

8. First, the Rule 2004 Motions are vastly overly broad with respect to the "Witnesses" they target. The Trustee seeks to examine not only the insurers and TPAs who were in direct contact with the Debtors, but also the third party Plan Sponsors. (*See* Rule 2004 Motion, ¶¶ 4-7.) However, the Plan Sponsors themselves would not have been involved in the alleged nonpayment or underpayment of the Accounts Receivables, as the administration of payments is generally handled by the TPAs and other payers. To the extent information regarding the terms of the ERISA Plans is relevant to the Trustee's inquiry, any such information can and should be gleaned from the TPAs and payers themselves before resorting to issuing hundreds of subpoenas seeking PHI from Plan Sponsors that likely do not even possess relevant information. There is simply no reason to subject hundreds of Plan Sponsors, who are otherwise entirely disinterested from this process, to invasive and costly examinations.

9. Baylor Scott & White Health does not understand what relevant information it would be able to provide in the Rule 2004 Motions as it is not likely to have any unique relevant information. Moreover, a narrowing of the list of Witnesses by reasonably excluding Baylor Scott & White Health and the other Plan Sponsors that likely do not possess relevant information would allow the Trustee to comply with the local procedural requirements, which as discussed below, have not been followed.

10. Furthermore, the Rule 2004 Motions fail to include any meaningful limit on the substantive scope of the proposed examinations. (*See* Rule 2004 Motion, ¶ 11.) As proposed, the Trustee would have blanket authority to issue document and deposition subpoenas to hundreds of parties seeking virtually any conceivable type of information. The unfettered scope of the Trustee's request imposes enormous burdens on the TPAs and Plan Sponsors and creates unique issues in light of the request for PHI that is subject to the Health Insurance Portability and Accountability Act ("HIPAA"). To the extent the Court approves the Rule 2004 Motions in any respect, the scope of the authorized discovery should be narrowly tailored to ensure the Trustee's discovery requests are not unnecessarily burdensome and limit the risk of disclosure of PHI that falls under HIPAA.

11. Further, the Trustee has access to the Debtors' records, which should contain the vast majority of the information sought from Baylor Scott & White Health and the other Witnesses.

12. The Trustee violates Rules 2004 by seeking discovery that is far beyond the so-called "fishing expeditions" permitted under Rule 2004. (*See* Rule 2004 Motion, ¶ 12, citing *In re Countrywide Home Loans*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008)). Specifically, in *In re Countrywide*, the Court stated that Rule 2004 "may not be used as a device to launch into a

4

wholesale investigation of a non-debtor's private business affairs." *Countrywide Home Loans*, 384 B.R. at 393-94. The scope of a Rule 2004 examination is not limitless. *In re Buccaneer Res., LLC*, 2015 Bankr. LEXIS 4203 (Bankr. S.D. Tex. Dec. 10, 2015).

13. In accordance with that doctrine, various courts have held that a party invoking Rule 2004 must show good cause to do so. *See In re Express One Int'l*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) citing *In re Eagle-Picher Industries, Inc.*, 169 B.R. 130, 134 (Bankr.S.D.Ohio.1994). *See also See e.g. In re Drexel Burnham Lambert Group*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); *In re Hammond*, 140 B.R. 197, 202 (S.D. Ohio 1992)

14. "Generally, good cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner undue hardship or injustice." *Id.* citing *In re Dinubilo*, 177 B.R. 932, 940 (E.D.Cal.1993). Additionally, "if the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied." *In re Express One Int'l*, 217 B.R. at 217.

15. Given the burdens and risks that the Trustee seeks to impose upon the Witnesses through blanket discovery, the cost and disruption to the examinees far outweighs any benefits that the Trustee may reasonably expect to enjoy. This is especially true with respect to Baylor Scott & White Health and the other Plan Sponsors who typically have no direct relationship with the Debtors and are not likely to have any unique information relevant to the Trustee's review. To the extent that examinations of Plan Sponsors could be justified, authority to conduct such examinations should be given only after the Trustee has exhausted less intrusive and burdensome options through the TPAs. As to the TPAs, the Court should reject the Trustee's request for blanket authority to take discovery without any limitation or scope. Given

5

the broad list of targets and unique HIPAA issues at play, the Trustee should be required to narrowly define the specific information sought before the Court authorizes any discovery of any party.

<u>The Trustee Lacks Jurisdiction to Pursue Claims Unrelated to Accounts Receivable</u>

16. The Rule 2004 Motions should be denied because the Trustee lacks standing to pursue claims relevant to the proposed examinations. It is well-established in the Fifth Circuit that "'[a]fter confirmation of a plan, the ability of the debtor' or its representative 'to enforce a claim once held by the estate is limited to that which has been retained in the plan.'" *Adler v. Frost (In re Gulf States Long Term Acute Care of Covington, L.L.C.)*, 614 Fed. Appx. 714, 717 (5th Cir. La. 2015) citing *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351 (5th Cir. 2008). "For a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions. The reservation must be specific and unequivocal. A blanket reservation of 'any and all claims' is insufficient to preserve the debtor's standing to sue." *Id.*

17. Here, the Plan purports to reserve only claims against "[a]ll other insurance companies and/or third parties who owe any Debtor any account receivable" for the "[c]ollection of accounts receivable and any and all related claims cognizable under applicable law." [Doc. No. 969, p. 81.] It does <u>not</u> refer to Baylor Scott & White Health in that reservation or claims. And the Plan does <u>not</u> identify Baylor Scott & White Health or any entities that may be related to Baylor Scott & White Health on the list of "providers" against which the Plan purports to reserve claims for the "[c]ollection of accounts receivable and any and all related claims cognizable under applicable law." [Doc. No. 969, pp. 87 – 91.] Without

an express and unequivocal reservation of claims against Baylor Scott & White Health, there is no basis for the Trustee's Rule 2004 exam.

18. The Plan goes on to attempt to reserve the same claims generally against "[a]ll patients or former patients" and "the employers of such patients or former patients." [Doc. No. 969, p. 82.] These generalized reservations in the Plan are problematic for the Trustee because the Plan fails to identify any <u>specific</u> claims beyond "collection of the Accounts Receivable." Accordingly, any other claims contemplated by the Trustee have been lost and the scope of any Rule 2004 Examinations should be limited accordingly.

19. If the Rule 2004 Motions are granted, the relief should be limited in scope to information relevant to the "[c]ollection of accounts receivable" as the Plan fails to specifically reserve any other claims.[1]

### The Rule 2004 Motions Fail to Comply with L.B.R. 2004-1

20. Third, the Trustee has failed to comply with the procedural requirements of L.B.R. 2004-1. Specifically, L.B.R. 2004-1 requires that a party moving for examinations pursuant to Rule 2004 confer with the proposed examinee or its counsel prior to filing.

21. Here, the Trustee has not done so and explains away his non-compliance by pointing out the impracticality of conferring with hundreds of proposed examinees. (*See* Rule 2004 Motion, ¶¶ 15-16.) Yet, the Trustee ignores the fact that, were the list of proposed examinees not grossly overbroad, he would not be faced with this problem. It is anathema to the spirit of L.B.R. 2004-1 to permit a party to skirt its requirements by failing to exercise judgment as to which parties are legitimately subject to examination.

---

[1] The Plan's vague reference to patients and employers may not be sufficient to preserve claims against Plan Sponsors under controlling Fifth Circuit law. Nothing herein constitutes an admission as to the adequacy of the Plan's preservation of any claim against Baylor or any Plan Sponsor.

22. Moreover, the Trustee's inability to comply with L.B.R. 2004-1 merely foreshadows the procedural quagmire into which these proceedings will be thrust if the Rule 2004 Motions are granted. The Trustee would apparently serve hundreds of subpoenas upon distinct and geographically diverse parties. Recipients of the subpoenas would then file motions to quash, discovery objections, requests for protective orders and various other responses. Given the scope and breadth of the Rule 2004 Motions, a framework for ensuring notices of subpoenas and depositions should be established to limit the cost and burden of compliance and so that all interested parties are aware of the proceedings.

23. Accordingly, and to the extent that this Court is inclined to grant the Rule 2004 Motions, even in part, the Trustee should be compelled to (1) narrow and winnow its list of Witnesses by reasonably *excluding* Baylor Scott & White Health and the other Plan Sponsors that likely do not possess relevant information or, alternatively, (2) establish a tiered discovery protocol by which the Rule 2004 examinations proceed first against TPAs and any subsequent examinations of the Plan Sponsors be limited to information that is not in Debtor's possession, custody or control or otherwise ascertained or ascertainable from the TPAs. Baylor Scott & White Health further respectfully requests that to the extent the Court grants the Trustee authority to conduct the requested Rule 2004 examination that: (i) the Trustee comply with the meet and confer requirement of L.B.R. 2004-1, (ii) narrowly define the information that may be discoverable to limit burden and potential HIPAA concerns, and (iii) that discovery would be conducted pursuant to an established discovery protocol by which the Rule 2004 examinations and discovery would be conducted through a reasonable and less burdensome process that is transparent to all stakeholders.

CONCLUSION

Based on the foregoing, Baylor Scott & White Health respectfully requests that the Court deny the Rule 2004 Motions and grant Baylor Scott & White Health such other and further relief that the Court deems just and proper.

DATED: July 27, 2016

Respectfully submitted,

/s/ Amanda L. Cottrell
Amanda L. Cottrell
  Texas Bar No. 24064972
  acottrell@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
214-740-8000 (Main Telephone)
214-740-8800 (Main Facsimile)

ATTORNEYS FOR BAYLOR SCOTT & WHITE HEALTH

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record herein via Court's electronic notification system on the parties listed in Exhibits A and B on the Affidavit of Service entered on Docket 1202, on this the 27th day of July, 2016.

/s/ Amanda L. Cottrell
Amanda L. Cottrell