Deborah Kovsky-Apap *(pro hac vice)*
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075-1505
248-359-7300 Telephone
248-359-7700 Facsimile
kovskyd@pepperlaw.com

Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Fort Worth, TX 76102
817-877-8855 Telephone
817-877-4151 Facsimile
jprostok@forsheyprostok.com
llankford@forsheyprostok.com

ATTORNEYS FOR THE GRANTOR TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| VICTORY MEDICAL CENTER | : | Case No. 15-42373-RFN |
| MID-CITIES, LP., *et al.*,[1] | : |  |
|  | : | Jointly Administered |
| Debtors. | : |  |

## OMNIBUS RESPONSE TO OBJECTIONS TO THE FIRST MOTION OF THE GRANTOR TRUSTEE FOR AUTHORITY TO CONDUCT RULE 2004 EXAMINATIONS OF CERTAIN ERISA PLAN SPONSORS AND THEIR THIRD PARTY ADMINISTRATORS AND FOR THE PRODUCTION OF DOCUMENTS [DKT. NO. 1193]

The Trustee filed his first motion (the "Motion") for authority under Rule 2004 to

issue document subpoenas and, if necessary, take examinations of a number of ERISA plan

sponsors and their third party administrators ("TPAs") [Docket No. 1193]. Thirteen of the

proposed examinees named in the Motion have objected to the Motion on various grounds. *See*

Docket Nos. 1208, 1209, 1212, 1227, 1230, 1273, 1274, 1285, 1286, 1287, 1302, 1315 and 1316.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Victory Medical Center Mid-Cities, GP, LLC (2376), Victory Medical Center Plano, LP (2377), Victory Medical Plano GP, LLC (2378), Victory Medical Center Craig Ranch, LP (2379), Victory Medical Center Craig Ranch GP, LLC (2381), Victory Medical Center Landmark, LP (2382), Victory Medical Center Landmark GP, LLC (2383), and Victory Parent Company, LLC (2384).

Because the objections are substantially similar, the Trustee hereby responds to all thirteen objections on an omnibus basis.

I.    **THE RULE 2004 MOTION IS APPROPRIATELY TAILORED TO SEEK RELEVANT DOCUMENTS INFORMATION CONCERNING THE TRUSTS' ASSETS AND LIABILITIES**

A number of objectors have asserted that the Trustee's list of targets under the Rule 2004 motion "is not narrowed by any meaningful or reasonable measure" and that there is "no meaningful limit on the substantive scope of proposed examinations." *See, e.g.,* Docket No. 1208 (Objection of Anthem); Docket No. 1227 (Objection of Blue Cross Blue Shield). They complain, in particular, about the fact that the Trustee seeks discovery from numerous parties, which they complain is particularly burdensome. Docket No. 1208; *see also* Docket No. 1212 (Objection of HD Supply) (arguing that each of the hundreds of witnesses "will be forced to deal with the regulatory, privacy protection, and confidentiality issues associated with producing documents pursuant to a 2004 examination notice and subpoena duces tecum. For each party to comply with a 2004 subpoena duces tecum, each would incur substantial time and expense."). Some objectors further suggest that the witnesses are not "legitimately subject to examination." *See, e.g.,* Docket No. 1274 (Objection of AT&T).

As an initial matter, it does not appear that the objectors have standing to raise these objections on behalf of other proposed witnesses. The vast majority of the entities from which the Trustee seeks discovery *did not object* to the Rule 2004 motion. For the objectors to assert, on behalf of those non-objecting witnesses, that the non-objecting witnesses will be unduly burdened is inappropriate.

Second, these objections are illogical. The fact that the Trustee seeks discovery from multiple parties does not increase the burden on any particular party. It is not a whit more

burdensome on HD Supply to comply with document requests merely because documents may also be sought from other, unrelated parties. Nor does the issuance of multiple subpoenas create, as Anthem alleges, a "procedural quagmire." Each subpoena will be governed by the applicable bankruptcy and federal rules, which plainly set out procedures for objections, motions to quash and compliance. None of the objectors have offered any explanation as to why those rules do not provide an adequate framework for the discovery sought by the Trustee. Furthermore, the Trustee anticipates issuing subpoenas in batches of approximately 25-50 per month, which will enable him, with the assistance of counsel, to manage the process.

Finally, the objections are factually inaccurate. Each and every one of the proposed witnesses either sponsors or is the third party administrator of an ERISA plan that—based on the Debtors' books and records—owes substantial amounts to the Trusts. The majority of the ERISA plans owe at least $100,000. Approximately 100 of the plans owe $500,000 or more. Nearly three dozen owe more than $1 million. It is entirely legitimate for the Trustee to seek information about these accounts receivable *from the very parties that owe them*.

Moreover, the Trustee's motion meaningfully limits the scope of the proposed discovery to topics surrounding the Trusts' accounts receivable—the primary asset that the Trustee is charged with administering. *See* Motion ¶ 11 (explaining that the Trustee seeks discovery on "(i) all aspects of the Accounts Receivable, including the bases for each non-payment, underpayment and/or setoff; (ii) the terms of the ERISA Plans pursuant to which the Grantor Trusts are entitled to payment for services rendered by the Debtors; (iii) the terms of the services contracts or other agreements between the ERISA Plans, their sponsors and the TPAs; (iv) the terms of any other contract, fee schedule or document that may or is contended to govern the payment of the Accounts Receivable; (v) the Witnesses' role in determining and/or

effectuating the non-payment, underpayment and/or setoff of any of the Accounts Receivable; and (vi) all related topics").

The Trustee has further refined these topics, as set forth in the proposed document requests attached hereto as **Exhibit A**. As those document requests demonstrate, the Trustee – far from using Rule 2004 "as a device to launch into a wholesale investigation of a non-debtor's private business affairs," as Anthem, Aetna and other allege – is laser-focused on obtaining documents that relate directly to the Trusts' assets and liabilities. As shown, the document requests will also be limited in timeframe based upon the date(s) of service rendered to plan beneficiaries.

The plan documents sought by the Trustee are particularly critical because at least some courts have found that possession of those documents, and the ability to cite to their specific provisions, is a prerequisite to being able to assert a claim under a plan. Debtor Victory Medical Center Southcross (formerly known as Innova Hospital San Antonio) learned this the hard way in a lawsuit it filed in the Northern District of Texas against a number of Blue Cross Blue Shield entities. The complaint alleged, in essence, that Blue Cross Blue Shield and its affiliates were violating the terms of the various plans they administered by paying claims at a rate that was far less than "usual, customary and reasonable," as required under typical benefits plans. Unfortunately, the Debtor did not have copies of most of the specific plans at issue and the Blue Cross Blue Shield entities persistently refused to produce them on behalf of their clients.[2] Despite the Debtor's argument to the court that it should not be penalized for the defendants' refusal to produce the plan documents, the court dismissed with prejudice the Debtor's claims for benefits. The court reasoned as follows:

---

[2] Some plan documents were eventually produced—*after* the deadline for the Debtor to amend its complaint and avoid dismissal had passed.

> Plaintiffs first cause of action is brought under Section 502(a) of
> ERISA "to recover benefits due[,] . . . to enforce the rights[,] . . .
> [and] to clarify the rights to future benefits . . . under the terms of
> the [ERISA-governed plans] . . . ." . . . Plaintiffs assert Anthem
> Defendants are liable for breaching ERISA-governed plans by
> failing to make payments as required under the terms of the plans. .
> . . Anthem Defendants argue Plaintiffs' ERISA claim should be
> dismissed because Plaintiffs fail to identify plan language that
> shows Plaintiffs are entitled to additional benefits under the
> plans….
>
> [T]o assert a claim for benefits under ERISA, a plaintiff must
> "identify a specific plan term that confers the benefits in
> question." . . . .
>
> . . . . Plaintiffs' general allegations that Anthem Defendants did not
> reimburse the amounts due under the terms of the plans, without
> further factual assertions about the plans' terms, fall short of the
> plausibility requirement. . . . The First Amended Complaint and
> Claim Schedule allege Anthem Defendants failed to pay
> reimbursements required by the plans and that Plaintiffs are
> entitled to additional payment under the plans, but do not identify
> facts about Plaintiffs' rights under the plans or how Anthem
> Defendants violated the plans. Plaintiffs fail to allege facts that
> allow the Court to reasonably infer that Anthem Defendants
> violated the terms of the plans and that Plaintiffs are entitled to
> recover benefits, enforce their rights, or clarify their rights to future
> benefits "under the terms of the plan[s]." 29 U.S.C. §
> 1132(a)(1)(B). Accordingly, the Court finds that Plaintiffs fail to
> state a claim under ERISA.

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587,

600-02 (N.D. Tex. 2014) (citations omitted). To avoid a similar result—and, indeed, to

determine whether the Trusts actually have viable claims "under the terms of the plan[s]"—the

Trustee must seek production of the plan documents under Rule 2004.

Accordingly, the scope of discovery sought by the Trustee is appropriate, in terms

of both the witnesses identified and the documents requested.

## II. THE TRUSTEE DOES NOT CURRENTLY POSSESS THE DOCUMENTS OR INFORMATION SOUGHT UNDER BANKRUPTCY RULE 2004

Several objectors have claimed—without any apparent factual basis—that the Trustee already has or has access to the documents and information sought pursuant to Rule 2004. *See, e.g.* Docket No. 1227 (Objection of Blue Cross Blue Shield) (alleging that the Debtors' records "should contain the vast majority of the information sought from BCBS"); Docket No. 1212 (Objection of HD Supply) (stating that "there is no doubt that the pre-conformation Debtors' estates, and the post confirmation Trustee, by succession and assignment, are already in possession of the records and information the Trustee claims he will be seeking in the Motion").

HD Supply's confident assertion that the Trustee already possesses all of the documents and records he seeks is based upon the notice requirements of ERISA and the Affordable Care Act. Under ERISA, if a plan makes an "adverse benefit determination" or denies a claim,

> [t]he adverse benefit determination must contain the following information:
>
> • Specific reasons for denial (for example, not medically necessary, not covered by the plan, or reached maximum amount of treatment permitted under the plan);
>
> • A reference to the specific plan provision(s) relied upon for the denial;
>
> • If denied for a lack of information, the notice must include a description of any additional material(s) needed to perfect the claim and an explanation of why such additional material is necessary;
>
> • A description of the plan's review procedures (for example, how appeals work);

• If used, either a description of rules, guidelines, or protocols relied upon in denying the claim, or that a copy of such items will be provided free upon request;

• If denial is based on medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the denial, applying the terms of the plan to the claimant's medical circumstances, or a statement that an explanation will be provided free of charge upon request; and

• A description of the claimant's right to go to court to recover benefits due under the plan.

Docket No. 1212, ¶ 24. In addition, under the Affordable Care Act, plans must:

• provide claimants with new or additional evidence or rationale before a final decision is made on the claim;

• ensure that claims and appeals are adjudicated in an independent and impartial manner;

• provide detail on the claim involved, the reason for denial, internal and external appeals processes that are available, and information on consumer assistance, in all claims denial notices;

• provide, on request, diagnosis and treatment codes (and their meanings) for any claim denial;

• provide notices in a culturally and linguistically appropriate manner; and

• allow claimants to resubmit an internal claim if a request for immediate external review is rejected.

*Id.* ¶ 26.

In reality, the explanations of benefits ("EOBs") that the Debtors received denying their claims contained little, if any, of this information. The EOB attached hereto as **Exhibit B** is a representative example of the type and extent of information provided in connection with the denial of a claim. It does not provide a "reference to the specific plan provision(s) relied upon for the denial." It unhelpfully includes Code N130 – "Alert: Consult plan benefit documents for information about restrictions for this service" – but does not provide

-7-

access to the plan benefit documents, much less point out the specific provision it contends is relevant to the denial. The EOB does not describe the plan's review procedures. It does not provide "a description of rules, guidelines, or protocols relied upon in denying the claim" – the area to which most of the Trustee's proposed document requests are directed. There is no description of "claimant's right to go to court to recover benefits due under the plan." It does not "provide detail on the claim involved." It provides a diagnostic code but not its meaning.

And while the ACA's mandate that notices be provided "in a culturally and linguistically appropriate manner" may be open to interpretation in the provider context, the sheer incomprehensibility of the EOB suggests that it falls short of the mark. For example, the cover page of the EOB identifies the amount of $16,690.72 as the "Out of Network Deductible" – Code 1, according to the EOB's glossary. The detail page states that the same amount, $16,690.72 is both a non-covered charge *and* a covered charge. And in the "Claim Level Adjustments" section, $16,690.72 is described not under Code 1 but under Code PR104, "Managed care withholding." This is inexplicable because there was no managed care contract between the Debtor and the insurer or plan. In short, the EOB does not enable the provider or the Trustee to understand how the plan and its TPA are treating the $16,690.72 portion of the claim, or why.

The EOB further provides that the entire remaining balance of the claim, $91,335.91, is contractually reduced to $0 because the charges exceed the contracted fee arrangement—a contracted fee arrangement that ***does not exist***. The EOB then contradicts itself by informing the Debtor that the entire amount of the claim, $108,026.63, is payable by the patient. Had the Debtor actually agreed to a contractual reduction of its claim, it would be unable to assert the full amount of its claim against anyone. Based on the information provided in the

-8-

EOB, the Trustee cannot possibly understand what the status of the claim is or the real reason for its denial.

Another widespread problem with the EOBs in the Trustee's possession arises in connection with so-called "recoupments." A TPA will often issue an EOB that shows that a claim against one ERISA plan is allowed, yet the net reimbursement is $0 because the TPA has set off the amount owed to Debtor against an alleged overpayment owed by the Debtor to a different plan administered by the TPA, or to the TPA itself as insurer. These triangular set-offs, which are commonly referred to as "recoupments," are typically identified on an EOB with the code "WO" and little further explanation. The EOB provides the amount of the set-off and account with which it is associated, but gives no information at all as to the basis of the alleged overpayment. Nor does the provider have the opportunity to contest the adverse benefit determination before being forced to repay the alleged overpayment via set-off. Through the Rule 2004 motion, the Trustee seeks information not currently available to him about the Debtors' liabilities for the supposed overpayments (which clearly falls within Rule 2004's express contours) as well as the mutuality of the set-offs.

In addition, the Trustee is seeking documents and information concerning any conflicts of interest that may exist where the same entity that evaluates claims for benefits has a financial stake in the outcome of those determinations. *Cf. Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (recognizing the potential for conflicts of interest where the same entity is responsible for evaluating and paying claims); *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258 (5th Cir. 2011) (in an ERISA action, permitting discovery into, among other things, the existence and extent of the conflict of interest created by the administrator's dual role in making benefit determinations and paying claims). Such document and information plainly

#40479842 v1

would not be encompassed even with an EOB that complied with the requirements of ERISA and the ACA. Accordingly, they are not in the Trustee's possession, and he is entitled to seek them under Rule 2004.

## III.   THE TRUSTEE IS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES UNDER ERISA PRIOR TO FILING A MOTION UNDER BANKRUPTCY RULE 2004

Several objectors argue that the Trustee's motion under Rule 2004 is premature because he has not demonstrated that he has exhausted all administrative remedies under ERISA. *See, e.g.,* Docket No. 1273 (Objection of Shell Oil and Schlumberger Technology); Docket No. 1212 (Objection of HD Supply) (arguing that the Trustee "is required to exhaust all appeals and administrative remedies under the HDS Plan ***before he can bring a collection suit*** before this Court") (emphasis added). This objection misses the point. The Trustee is not bringing a collection suit before this Court. A motion under Rule 2004 is not a judicial action to recover ERISA benefits. The Trustee cannot obtain, nor is he asking for, any form of substantive recovery through this Motion. Rule 2004 is merely a tool that the Trustee may use to discovery vital information about the assets he is charged with administering—including whether to attempt to bring a collection suit at all. Thus, this objection should be overruled.

## IV.   THE TRUSTEE'S STANDING TO ASSERT COLLECTION OR RELATED CLAIMS IS NOT AT ISSUE IN THIS RULE 2004 MOTION

Certain objectors have argued that the Trustee lacks standing to assert collection claims because of alleged anti-assignment provisions contained in the applicable plan documents, or that the Trustee lacks standing to assert claims other than collection claims because such claims were not adequately reserved in the Debtors' plan of reorganization. *See* Docket No. 1212 (Objection of HD Supply); Docket No. 1273 (Objection of Shell Oil and Schlumberger Technology). The Trustee's standing to pursue a collection action or any other

#40479842 v1

type of action is not before this Court. As noted above, a motion under Rule 2004 to take discovery is not a collection action.

The discovery that the Trustee seeks will enable him, among other things, to determine what claims he does have standing to pursue. For example, if the Motion is granted, the Trustee will obtain copies of the applicable plan documents for the relevant time periods and will be able to determine whether those documents contain anti-assignment provisions, the scope of such provisions, and whether such provisions are unambiguous. The Trustee will also seek to obtain documents and information shedding light on potential defenses, such as waiver and estoppel, to the enforcement of any anti-assignment provisions.

Nothing in Rule 2004 requires a debtor or trustee to demonstrate that it has a right to bring a claim before it will be permitted to examine witnesses and documents. To the contrary, Rule 2004 gives the Trustee an extremely broad right of discovery as to any matter that relates "to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or . . . any matter relevant to the case or the formulation of a plan." FED. R. BANKR. P. 2004(b). That right necessarily extends to discovery into whether the Trustee has the right to pursue claims, and what the extent and basis of those claims might be.

## V. THE TRUSTEE WILL ENTER INTO AN APPROPRIATE PROTECTIVE ORDER TO SAFEGUARD ANY PHI PRODUCED BY THE WITNESSES

Many of the documents sought by the Trustee do not implicate protected health information ("PHI"). For example, plan documents, summary plan descriptions, Form 5500s, administrative services contracts, and documents and communications regarding bonuses or additional compensation to be paid to a TPA based on cost savings are all general in nature and would not be expected to involve any personal, confidential information. Similarly, courts have expressly found that materials concerning the guidelines, rules, and criteria applied in granting or

denying claims for benefits are not confidential. *See, e.g., Levy v. INA Life Ins. Co.*, 2006 U.S. Dist. LEXIS 83060, *6-7 (S.D.N.Y. Nov. 14, 2006).

To the extent that the documents or information sought by the Trustee involves PHI, the Trustee will enter into an appropriate protective order in compliance with 45 C.F.R.164.512(e). Attached hereto as **Exhibit C** is the motion for a protective order that was agreed to by the parties and approved by the court in *Innova Hospital* as adequate to protect PHI; the Trustee proposes using a substantially similar order here.

## VI. THE TRUSTEE WILL MEET AND CONFER WITH EXAMINEES OR THEIR COUNSEL PRIOR TO SCHEDULING ANY DEPOSITIONS

Local Bankruptcy Rule 2004-1 requires that "[b]efore filing a motion for examination under Bankruptcy Rule 2004, counsel for the moving party shall confer with the proposed examinee or the examinee's counsel (if represented by counsel) to arrange for a mutually agreeable date, place and time for the examination," or else explain why it was not possible for the conference to be held. It appears that the requirement to confer about the "date, place and time for the examination" refers to the deposition of witnesses who will be required to appear, as their schedules and those of their counsel naturally must be consulted.

If the Motion is granted, the Trustee anticipates first issuing document requests and obtaining and reviewing documents before scheduling depositions. It is very likely that the Trustee will determine that some, or even many, of the listed witnesses need not be deposed at all. As set forth in the Motion, "[i]f the Court grants the relief requested, the Trustee will attempt to confer with each Witness to be deposed to reach agreement as to the date, time and place of such depositions, and will seek further relief from this Court if an agreement cannot be reached." Motion ¶ 16. The Trustee submits that this procedure complies with the intent of Local

Bankruptcy Rule 2004-1, while avoiding many needless "meet and confers" for depositions that ultimately are never sought.

For the foregoing reasons, the Trustee respectfully requests that the Court grant the Motion.

Dated:  August 19, 2016                              Respectfully submitted,

                                                     /s/ Deborah Kovsky-Apap
                                                     Deborah Kovsky-Apap *(pro hac vice)*
                                                     PEPPER HAMILTON LLP
                                                     4000 Town Center, Suite 1800
                                                     Southfield, MI 48075
                                                     248-359-7300 Telephone
                                                     248-359-7700 Facsimile
                                                     kovskyd@pepperlaw.com

                                                     and

                                                     /s/ Lynda L. Lankford
                                                     Jeff P. Prostok
                                                     State Bar No. 16352500
                                                     Lynda L. Lankford
                                                     State Bar No. 11935020
                                                     FORSHEY & PROSTOK LLP
                                                     777 Main St., Suite 1290
                                                     Fort Worth, TX  76102
                                                     817-877-8855 Telephone
                                                     817-877-4151 Facsimile
                                                     jprostok@forsheyprostok.com
                                                     llankford@forsheyprostok.com

                                                     **Attorneys for the Grantor Trustee**

#40479842 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed electronically and was served upon all parties that are registered or otherwise entitled to receive electronic notice in this bankruptcy case via ECF electronic on the 19th day of August, 2016.

/s/ Lynda L. Lankford
Lynda L. Lankford

L:\JPROSTOK\Victory Med Ctr Creditor Comm #5760; #5829\Pleadings\Omnibus Response to Objections to First Rule 2004 Motion dkt 1193.docx

#40479842 v1

# EXHIBIT A

*Proposed Document Requests to Plan Sponsors*

# <u>SCHEDULE A</u>

## <u>INSTRUCTIONS</u>

1.     In producing documents pursuant to these Document Requests, you are required to furnish all documents in your possession, custody, or control, including without limitation documents possessed by your agents, attorneys, officers, directors, or employees.

2.     These Document Requests are continuing in character so as to require that supplemental answers be filed promptly if further or different information is obtained responsive to any Document Request. If, after your initial production, you find additional responsive documents or such documents come into your possession, you must produce them.

3.     No part of the Document Requests should be left unanswered merely because of an objection is interposed to another part of the Document Request. If a partial or incomplete response is provided, you shall state that the answer is partial or incomplete.

4.     Where a claim of privilege is asserted in objecting to any Document Request or part thereof, and information is not provided on the basis of such assertion:

      a.     You shall, in the objection to the Document Request, identify with specificity the nature of the privilege that is being claimed;

      b.     The following information should be provided in the objection, unless divulging such information would cause disclosure of the allegedly privileged information:

            i.    The type of document or communication;

            ii.    The subject matter of the document or communication;

            iii.    The date of the document or communication;

            iv.    Such other information sufficient to identify the document or communication including the author of the document or the names of the person(s) present when the communication was made.

5.     If any document requested in these Document Requests has been lost, discarded or destroyed, you must identify such document as completely as possible, including the following information:

   a.     The type of document;

   b.     The date of the document;

   c.     The date or approximate date that the document was lost, discarded or destroyed;

   d.     The circumstances or manner in which the document was lost, discarded or destroyed;

   e.     If the document was discarded or destroyed, the reason for disposing of the document;

   f.     The person(s) having knowledge of the circumstances surrounding the disposal of the document;

   g.     The person(s) having knowledge of the contents of the document.

6.     All words contained in the Document Requests shall have their normal contextual meaning, unless otherwise defined herein.

7.     Documents are to be produced in a way that identifies the request or requests to which each document applies, or as they are maintained in the usual course of business.

8.     These Document Requests seek Documents from January 1, 2010 through the present. [**may be modified depending on when relevant services were provided**.]

## DEFINITIONS

1.     "<u>Administrative Services Contract</u>" shall mean any contract or agreement between you and a TPA, including without limitation any administrative services only ("ASO") agreement.

2.     "<u>Affiliate</u>" shall have the meaning set forth in § 101 of the Bankruptcy Code.

-2-

3.      "Agent" shall mean any employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

4.      "Communication" shall mean any transmittal of information by any means, including, without limitation, any oral, written or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication.

5.      "Concerning" shall mean either directly or indirectly referring to, relating to, pertaining to, constituting, evidencing, comprising, containing, setting forth, summarizing, reflecting, stating, describing, recording, noting, embodying, mentioning, studying, analyzing, discussing, or evaluating.

6.      "Covered Person" shall mean any Person who is or may become entitled to benefits under an ERISA Plan.

7.      "Debtor" shall mean any of the debtors whose Chapter 11 bankruptcy cases are being jointly administered at Case No. 15-42373 (Bankr. N.D. Tex.).

8.      "Document" shall have the broadest meaning ascribed to it under Fed. R. Civ. P. 34, including but not limited to the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of you, your attorneys, representatives, employees, Agents or any other natural person or business or legal entity acting or purporting to act for or on your behalf. Also, the term "Document" means all documents and tangible things in any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or

-3-

information can be recorded or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, note, file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph, index, list, and any written, recorded, transcribed, punched, taped, filmed, or graphic matter whatsoever, however produced or reproduced. The term "Document" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

9. "EOB" shall mean an explanation of benefits or notification of benefit determination under an ERISA Plan, including but not limited to the notices described in 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g).

10. "ERA" shall mean an electronic remittance advice.

11. "ERISA" shall mean the Employee Retirement Income Security Act of 1974.

12. "ERISA Plan" shall mean an "employee welfare benefit plan" and/or "welfare plan," as set forth in 29 U.S.C. § 1002(1), that you sponsor or to which you contribute in any way.

13. "Fiduciary" shall have the same definition set forth in 29 U.S.C. § 1002(21).

14. "Form 5500" shall mean Form 5500, Annual Return/Report of Employee Benefit Plan.

15. "Patient" shall mean any Covered Person who received medical and/or surgical services provided by any of the Debtors.

-4-

16.     "Person" shall mean any natural person, firm, association, partnership, corporation or other form of legal, governmental or business entity, public or private, and any present or former officer, director, partner, agent, employee or representative of such Person.

17.     "Plan Administrator" shall have the same meaning as "administrator" as set forth in 29 U.S.C. § 1002(16).

18.      "SMM" shall mean a summary of material modifications to an ERISA Plan as required under 29 U.S.C § 1022.

19.     "SPD" shall mean a summary plan description as required under 29 U.S.C. § 1022.

20.     "TPA" shall mean any third party administrator or service provider with whom you have contracted to administer an ERISA Plan, process health care claims, and/or make payment to physicians, hospitals or other healthcare providers.

21.     "UCR" shall mean and include "usual, customary and reasonable," "customary and reasonable" and any like term intended to refer to or approximate the amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service.

22.     "You" or "your" shall mean _____.

23.     "And," "each," "all" and "any" shall be construed as necessary in each case to make each Document Request inclusive, rather than exclusive.

24.     The singular shall include the plural and vice versa; the terms "and" and "or" shall be both conjunctive and disjunctive; the masculine includes the feminine; and the term "including" means "including without limitation."

-5-

## REQUESTS FOR PRODUCTION

1.      All ERISA Plan Documents, including without limitation all revisions and amendments thereto.

2.      All SPDs, including without limitation all revisions and amendments thereto.

3.      All SMMs.

4.      The ERISA Plan's annual report for each year.

5.      All Form 5500s concerning the ERISA Plan.

6.      Documents sufficient to identify each and every Fiduciary under the ERISA Plan.

7.      Documents sufficient to identify each Plan Administrator.

8.      All Documents concerning formulas, procedures, methodologies, or schedules that have been or can be applied in determining a Patient's benefit under the ERISA Plan, including without limitation third-party fee schedules, reviews and/or analyses.

9.      All Documents concerning formulas, procedures, methodologies, or schedules that have been or can be applied in determining the amount paid to a Debtor for services provided to a Patient, including without limitation third-party fee schedules, reviews and/or analyses

10.      All insurance contracts, stop loss contracts, health insurance contracts, insurance intermediary services contracts related to the ERISA Plan or to which the ERISA Plan is party.

11.      All Administrative Services Contracts between you or the ERISA Plan, on the one hand, and any TPA, on the other hand.

12.      All EOBs concerning any Patient.

13.      All ERAs concerning any Patient.

14.      All Documents concerning the determination of the medical necessity of any service provided to a Patient by a Debtor.

-6-

15.     All Documents concerning the pre-authorization of any service provided to a Patient by a Debtor.

16.     All Documents concerning the determination that a service provided to a Patient by a Debtor is excluded or non-covered under the ERISA Plan.

17.     All Documents concerning the determination of UCR with respect to a service provided to a Patient by a Debtor.

18.     All Documents concerning any utilization review or prospective utilization review undertaken with respect to a service provided to a Patient by a Debtor.

19.     All Documents concerning the use of any independent review organization in connection with the claim of a Patient.

20.     All Communications between you and/or the ERISA Plan, on the one hand, and a utilization review or independent review organization, on the other hand, concerning the claim of a Patient.

21.     All Documents concerning the use of a fee analyzer or similar database or software to determine a Patient's benefit under the ERISA Plan.

22.     All Documents concerning the use of a fee analyzer or similar database or software to determine the amount to be paid to a Debtor for services provided to a Patient.

23.     All Documents concerning the use of databases maintained by Ingenix or OptumInsight to determine a Patient's benefit under the ERISA Plan.

24.     All Documents concerning the use of databases maintained by Ingenix or OptumInsight to determine the amount to be paid to a Debtor for services provided to a Patient.

25.     All Documents concerning any Communications with a Debtor through a third party repricing organization such as, but not limited to, Viant or Multiplan.

-7-

26.    All Documents (including, without limitation, Communications between or among you, the ERISA Plan and/or a TPA) concerning the determination of a Patient's benefit under the ERISA Plan.

27.    All Documents (including, without limitation, Communications between or among you, the ERISA Plan and/or a TPA) concerning the determination of the amount to be paid to a Debtor for services provided to a Patient.

28.    All Documents (including, without limitation, Communications between or among you, the ERISA Plan and/or a TPA) concerning any adverse benefit determination affecting a Patient.

29.    All Documents (including, without limitation, Communications between or among you, the ERISA Plan and/or a TPA) concerning any Patient claim.

30.    All Documents (including, without limitation, Communications between or among you, the ERISA Plan and/or a TPA) concerning any bonus or additional compensation to be paid to the TPA based upon cost savings realized by the TPA.

31.    Documents sufficient to show all payments made by you or the ERISA Plan for medical services provided to a Patient.

32.    All Documents (including, without limitation, Communications between or among you, the ERISA Plan and/or a TPA) concerning amounts withheld from, set off against or recouped from payments made by you or the ERISA Plan for medical services provided to a Patient.

*Proposed Document Requests to Third Party Administrators*

# <u>SCHEDULE A</u>

## <u>INSTRUCTIONS</u>

1.      In producing documents pursuant to these Document Requests, you are required to furnish all documents in your possession, custody, or control, including without limitation documents possessed by your agents, attorneys, officers, directors, or employees.

2.      These Document Requests are continuing in character so as to require that supplemental answers be filed promptly if further or different information is obtained responsive to any Document Request.  If, after your initial production, you find additional responsive documents or such documents come into your possession, you must produce them.

3.      No part of the Document Requests should be left unanswered merely because of an objection is interposed to another part of the Document Request.  If a partial or incomplete response is provided, you shall state that the answer is partial or incomplete.

4.      Where a claim of privilege is asserted in objecting to any Document Request or part thereof, and information is not provided on the basis of such assertion:

   a.      You shall, in the objection to the Document Request, identify with specificity the nature of the privilege that is being claimed;

   b.      The following information should be provided in the objection, unless divulging such information would cause disclosure of the allegedly privileged information:

      i.   The type of document or communication;

      ii.  The subject matter of the document or communication;

      iii. The date of the document or communication;

      iv.  Such other information sufficient to identify the document or communication including the author of the document or the names of the person(s) present when the communication was made.

5.  If any document requested in these Document Requests has been lost, discarded or destroyed, you must identify such document as completely as possible, including the following information:

    a.  The type of document;

    b.  The date of the document;

    c.  The date or approximate date that the document was lost, discarded or destroyed;

    d.  The circumstances or manner in which the document was lost, discarded or destroyed;

    e.  If the document was discarded or destroyed, the reason for disposing of the document;

    f.  The person(s) having knowledge of the circumstances surrounding the disposal of the document;

    g.  The person(s) having knowledge of the contents of the document.

6.  All words contained in the Document Requests shall have their normal contextual meaning, unless otherwise defined herein.

7.  Documents are to be produced in a way that identifies the request or requests to which each document applies, or as they are maintained in the usual course of business.

8.  These Document Requests seek Documents from January 1, 2010 through the present. [**may be modified depending on when relevant services were provided**.]

## **DEFINITIONS**

1.  "<u>Administrative Services Contract</u>" shall mean any contract or agreement between you and an ERISA Plan, including without limitation any administrative services only ("ASO") agreement.

2.  "<u>Affiliate</u>" shall have the meaning set forth in § 101 of the Bankruptcy Code.

3.     "Agent" shall mean any employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

4.     "Communication" shall mean any transmittal of information by any means, including, without limitation, any oral, written or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, any correspondence, conversations, telephone calls, dialogues, discussions, interviews, consultations, agreements, or any other understandings between or among two or more Persons or any Document that recorded or reflected any such Communication.

5.     "Concerning" shall mean either directly or indirectly referring to, relating to, pertaining to, constituting, evidencing, comprising, containing, setting forth, summarizing, reflecting, stating, describing, recording, noting, embodying, mentioning, studying, analyzing, discussing, or evaluating.

6.     "Covered Person" shall mean any Person who is or may become entitled to benefits under an ERISA Plan.

7.     "Debtor" shall mean any of the debtors whose Chapter 11 bankruptcy cases are being jointly administered at Case No. 15-42373 (Bankr. N.D. Tex.).

8.     "Document" shall have the broadest meaning ascribed to it under Fed. R. Civ. P. 34, including but not limited to the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of you, your attorneys, representatives, employees, Agents or any other natural person or business or legal entity acting or purporting to act for or on your behalf. Also, the term "Document" means all documents and tangible things in any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or

information can be recorded or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, note, file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph, index, list, and any written, recorded, transcribed, punched, taped, filmed, or graphic matter whatsoever, however produced or reproduced. The term "Document" shall also include all copies or drafts of Documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

9.      "EOB" shall mean an explanation of benefits or notification of benefit determination under an ERISA Plan, including but not limited to the notices described in 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g).

10.      "ERA" shall mean an electronic remittance advice.

11.      "ERISA" shall mean the Employee Retirement Income Security Act of 1974.

12.      "ERISA Plan" shall mean any "employee welfare benefit plan" and/or "welfare plan," as set forth in 29 U.S.C. § 1002(1), with respect to which you have contracted to provide services, including, but not limited to, administering the ERISA Plan, processing health care claims, and/or making payment to physicians, hospitals or other healthcare providers.

13.      "Fiduciary" shall have the same definition set forth in 29 U.S.C. § 1002(21).

14.      "Form 5500" shall mean Form 5500, Annual Return/Report of Employee Benefit Plan.

15.     "Patient" shall mean any Covered Person who received medical and/or surgical services provided by any of the Debtors.

16.     "Person" shall mean any natural person, firm, association, partnership, corporation or other form of legal, governmental or business entity, public or private, and any present or former officer, director, partner, agent, employee or representative of such Person.

17.     "Plan Administrator" shall, with respect to any ERISA Plan as defined herein, have the same meaning as "administrator" as set forth in 29 U.S.C. § 1002(16)(A).

18.     "Plan Sponsor" shall, with respect to any ERISA Plan as defined herein, have the same meaning as "plan sponsor" as set forth in 29 U.S.C. § 1002(16)(B).

19.     "SMM" shall mean a summary of material modifications to an ERISA Plan as required under 29 U.S.C § 1022.

20.     "SPD" shall mean a summary plan description as required under 29 U.S.C. § 1022.

21.     "UCR" shall mean and include "usual, customary and reasonable," "customary and reasonable" and any like term intended to refer to or approximate the amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service.

22.     "You" or "your" shall mean _____.

23.     "And," "each," "all" and "any" shall be construed as necessary in each case to make each Document Request inclusive, rather than exclusive.

24.     The singular shall include the plural and vice versa; the terms "and" and "or" shall be both conjunctive and disjunctive; the masculine includes the feminine; and the term "including" means "including without limitation."

#40202134 v1

## REQUESTS FOR PRODUCTION

1.     All ERISA Plan Documents, including without limitation all revisions and amendments thereto.

2.     All SPDs, including without limitation all revisions and amendments thereto.

3.     All SMMs.

4.     Each ERISA Plan's annual report for each year.

5.     All Form 5500s concerning each ERISA Plan.

6.     Documents sufficient to identify each Fiduciary under each ERISA Plan.

7.     Documents sufficient to identify each Plan Administrator.

8.     All Documents concerning formulas, procedures, methodologies, or schedules that have been or can be applied in determining a Patient's benefit under an ERISA Plan, including without limitation third-party fee schedules, reviews and/or analyses.

9.     All Documents concerning formulas, procedures, methodologies, or schedules that have been or can be applied in determining the amount paid to a Debtor for services provided to a Patient, including without limitation third-party fee schedules, reviews and/or analyses

10.     All insurance contracts, stop loss contracts, health insurance contracts, insurance intermediary services contracts between you, on the one hand, and an ERISA Plan or Plan Sponsor, on the other hand.

11.     All Administrative Services Contracts between you, on the one hand, and an ERISA Plan or Plan Sponsor, on the other hand.

12.     All EOBs concerning any Patient.

13.     All ERAs concerning any Patient.

-6-

14.     All Documents concerning the determination of the medical necessity of any service provided to a Patient by a Debtor.

15.     All Documents concerning the pre-authorization of any service provided to a Patient by a Debtor.

16.     All Documents concerning the determination that a service provided to a Patient by a Debtor is excluded or non-covered under an ERISA Plan.

17.     All Documents concerning the determination of UCR with respect to a service provided to a Patient by a Debtor.

18.     All Documents concerning any utilization review or prospective utilization review undertaken with respect to a service provided to a Patient by a Debtor.

19.     All Documents concerning the use of any independent review organization in connection with the claim of a Patient.

20.     All Communications between you, on the one hand, and a utilization review or independent review organization, on the other hand, concerning the claim of a Patient.

21.     All Documents concerning the use of a fee analyzer or similar database or software to determine a Patient's benefit under an ERISA Plan.

22.     All Documents concerning the use of a fee analyzer or similar database or software to determine the amount to be paid to a Debtor for services provided to a Patient.

23.     All Documents concerning the use of databases maintained by Ingenix or OptumInsight to determine a Patient's benefit under an ERISA Plan.

24.     All Documents concerning the use of databases maintained by Ingenix or OptumInsight to determine the amount to be paid to a Debtor for services provided to a Patient.

#40202134 v1

25.     All Documents concerning any Communications with a Debtor through a third party repricing organization such as, but not limited to, Viant or Multiplan.

26.     All Documents (including, without limitation, Communications between or among you, an ERISA Plan and/or a Plan Sponsor) concerning the determination of a Patient's benefit under an ERISA Plan.

27.     All Documents (including, without limitation, Communications between or among you, an ERISA Plan and/or a Plan Sponsor) concerning the determination of the amount to be paid to a Debtor for services provided to a Patient.

28.     All Documents (including, without limitation, Communications between or among you, an ERISA Plan and/or a Plan Sponsor) concerning any adverse benefit determination affecting a Patient.

29.     All Documents (including, without limitation, Communications between or among you, an ERISA Plan and/or a Plan Sponsor) concerning any Patient claim.

30.     All Documents (including, without limitation, Communications between or among you, an ERISA Plan and/or a Plan Sponsor) concerning any bonus or additional compensation to be paid to you based upon cost savings realized by you.

31.     Documents sufficient to show all payments made by an ERISA Plan or Plan Sponsor to you for medical services provided to a Patient.

32.     Documents sufficient to show all payments made by you to a Debtor for medical services provided to a Patient.

33.     All Documents (including, without limitation, Communications between or among you, an ERISA Plan and/or a Plan Sponsor) concerning amounts withheld from, set off

against or recouped from payments made by you, an ERISA Plan or a Plan Sponsor, for medical services provided to a Patient.

#40202134 v1

**EXHIBIT B**

## Detail Search Results

Learn More >>

| | | |
|---|---|---|
| Patient Name: | ▉ | **BlueCross BlueShield** |
| Member ID: | 000000▉ | **of Texas** |
| Alpha Prefix: | | |
| Gender: | | Subscriber Name: ▉ |
| Group #: | | Relationship To Subscriber: Self |
| Date of Birth: | | Patient Account #: ▉ |

## Claim Details   View Less

| | | | | |
|---|---|---|---|---|
| Claim Number: | 321004024750C00 | | Claim Status: | Issued - No payment |
| Received Date: | 07/29/2013 | | Billed Amount: | $108,026.63 |
| Processed Date: | 07/31/2013 | | Paid Amount: | $0.00 |
| From Service Date: | | | Coinsurance: | $0.00 |
| To Service Date: | ▉ | | Co-Pay/Deductible Amount: | $0.00 |
| Status Details: | | | Ineligible Amount: | $1,521.81 |
| Hospital Payment Indicator: | H - | | DRG Code: | 473 |
| Approved Length of Stay: | 005 | | DRG Version: | 0 |
| | | | DRG Weight: | |
| Check/EFT/Voucher: | 31797958 | | Provider ID: | 1922384114 |
| Check Date: | 07/31/2013 | | Provider Name: | VICTORY MEDICAL CENTER PLANO LP |
| Payee Name: | VICTORY MEDICAL CENTER PLANO LP | | Additional Pay: | $0.00 |
| Prior Paid AMT: | $0.00 | | Prior Notification Coinsurance: ? | $0.00 |
| Prior Notification Deductible: ? | $0.00 | | Out of Network Deductible: | $16,690.72 |
| Health Care Account Amount: | $0.00 | | Out of Network Coinsurance: | $0.00 |
| Other Carrier Paid: | $0.00 | | Patient Share Amount: | $108,026.63 |
| Medicare Paid Amount: | $0.00 | | | |

## Service Lines

| From Service | To Service | Rev/Proc | | | | Ineligible | Interim | HCPCS | |
|---|---|---|---|---|---|---|---|---|---|

| Date | Date | Code | Billed Amt | Paid Amt | Ineligible Amt | Reason Code | Discount | Code | Modifier |
|------|------|------|-----------|----------|----------------|-------------|----------|------|----------|
| ■■■■ | ■■■■ | 110 | $1,800.00 | $0.00 | $1,521.81 | 401 | ($234.51) | | |
| ■■■■ | ■■■■ | 250 | $257.00 | $0.00 | $0.00 | | ($216.73) | | |
| ■■■■ | ■■■■ | 251 | $101.29 | $0.00 | $0.00 | | ($85.42) | | |
| ■■■■ | ■■■■ | 252 | $1,351.12 | $0.00 | $0.00 | | ($1,139.39) | | |
| ■■■■ | ■■■■ | 257 | $22.00 | $0.00 | $0.00 | | ($18.56) | | |
| ■■■■ | ■■■■ | 258 | $520.98 | $0.00 | $0.00 | | ($439.34) | | |
| ■■■■ | ■■■■ | 270 | $817.52 | $0.00 | $0.00 | | ($689.41) | | |
| ■■■■ | ■■■■ | 272 | $6,035.72 | $0.00 | $0.00 | | ($5,089.85) | | |
| ■■■■ | ■■■■ | 278 | $30,456.00 | $0.00 | $0.00 | | ($25,683.15) | | |
| ■■■■ | ■■■■ | 320 | $2,100.00 | $0.00 | $0.00 | | ($1,770.91) | | |
| ■■■■ | ■■■■ | 360 | $31,980.00 | $0.00 | $0.00 | | ($26,968.31) | | |
| ■■■■ | ■■■■ | 370 | $11,700.00 | $0.00 | $0.00 | | ($9,866.46) | | |
| ■■■■ | ■■■■ | 460 | $385.00 | $0.00 | $0.00 | | ($324.67) | | |
| ■■■■ | ■■■■ | 710 | $5,100.00 | $0.00 | $0.00 | | ($4,300.77) | | |
| ■■■■ | ■■■■ | 947 | $15,400.00 | $0.00 | $0.00 | | ($12,986.62) | | |

## Ineligible Reason Codes

| Reason Code | Description |
|-------------|-------------|
| 401 | Charge exceeds average semi private room rate. |

```
SSI RA Detail Report                                              Date - 08/01/13
Client : 06574
NPI : 1922384114
FTN : 451804334
Provider : 1922384114
Date : 07/31/13                    VICTORY MEDICAL CENTER PLANO LP
Check : C13212317979580                      TX BLUE CROSS
Page : 1
```

| Patient | | From Date | Covd | Rptd Chrgs | DRG Nbr | Prof Comp | CoIns | MSP Pri | HCPCS Amt | Interest |
|---|---|---|---|---|---|---|---|---|---|---|
| PCN Number | | Thru Date | NCovd | Ncovd Chrgs | DRG Amt | Outlier | MSP Liable | Per Diem | Cont Adj | Pat Refund |
| Policy Number | Clm St | Pat Stat | Cost | Denied Chrgs | Blood Ded | Deductible | Reimb Rate | ESRD Amt | Cov Chrgs | Net Reimb |
| | | | 0 | 79694.66 | 491 | 0.00 | 731.32 | 0.00 | 0.00 | 0.00 |
| 202953 | 111 0 | | | 61758.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 1 | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8130.98 | 17204.66 |
| ICN: | | MRN: | | | | | | | PAT RESP: | 62490.00 |

```
        Claim Level Adjustments: PR2      731.32
                                 PR96   61758.68

        Claim Level Remark Codes: N130
```

| Rev Cd | HCPCS | Qty | Service Date | Chrg Amt | Pymt Amt | APC | Allow Amt | Adj Cd | Adj Amt |
|---|---|---|---|---|---|---|---|---|---|

| | | | | 232113.17 | 473 | 0.00 | 0.00 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|---|---|---|
| 203110 | 11 | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 1 | | | 232113.17 | 0.00 | 0.00 | 0.00 | 0.00 | 16690.72 | 0.00 |
| ICN: | | MRN: | | | | | | | PAT RESP: | 0.00 |

```
        Claim Level Adjustments: CO197   232113.17

        Claim Level Remark Codes: N130
```

| Rev Cd | HCPCS | Qty | Service Date | Chrg Amt | Pymt Amt | APC | Allow Amt | Adj Cd | Adj Amt |
|---|---|---|---|---|---|---|---|---|---|

| | | | | 108026.63 | 473 | 0.00 | 0.00 | 0.00 | 0.00 |
|---|---|---|---|---|---|---|---|---|---|
| 203142 | 11 | | | 16690.72 | 0.00 | 0.00 | 0.00 | 0.00 | 91335.91 | 0.00 |
| | 1 | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16690.72 | 0.00 |
| ICN: | | MRN: | | | | | | | PAT RESP: | 108026.63 |

```
        Claim Level Adjustments: CO45    89814.10
                                 PR104   16690.72
                                 PR45     1521.81

        Claim Level Remark Codes: N130
```

| Rev Cd | HCPCS | Qty | Service Date | Chrg Amt | Pymt Amt | APC | Allow Amt | Adj Cd | Adj Amt |
|---|---|---|---|---|---|---|---|---|---|

```
SSI RA Detail Report                                                    Date - 08/01/13
Client : 06574
NPI : 1922384114
PTN : 451804334
Provider : 1922384114
Date : 07/31/13                          VICTORY MEDICAL CENTER PLANO LP
Check : C13212317979580                          TX BLUE CROSS
Page : 40
```

Check Summary :

```
    Check Number : C132123179795      Check Total   :    621348.35      Claim Count  : 50
    Covered Chrg :    418481.08        Contract Chrg: 1244961.75         Provider Pay :   621348.35
    NonCov  Chrg :    207802.67        Denied Chrg  :  200179.51         Deductibles  :     6034.58
    CoInsurance  :     34808.70        Outlier Chrg :       0.00         Pat Refund   :        0.00
    Interest     :         0.00        MSP Primary  :       0.00         MSP Liability:        0.00
```

Provider Level Benefits :

```
    Reported Check Amount :      621348.35
    Total Claim Payments  :      621348.35
    Total PLB Adjustments :           0.00
    Sum Payment - Adjust  :      621348.35
```

GLOSSARY: REMARK AND REASON CODES

1        Deductible Amount

104      Managed care withholding.

119      Benefit maximum for this time period or occurrence has been reached.

16       Claim/service lacks information which is needed for adjudication. At least one Remark Code must be
         provided (may be comprised of either the Remittance Advice Remark Code or NCPDP Reject Reason Code.)

197      Payment adjusted for absence of precertification/authorization. This change effective 1/1/2008:
         Payment adjusted for absence of precertification/authorization/notification.

2        Coinsurance Amount

27       Expenses incurred after coverage terminated.

45       Charges exceed your contracted/ legislated fee arrangement. This change to be effective 6/1/07:
         Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement. (Use Group Codes PR or
         CO depending upon liability).

96       Non-covered charge(s). At least one Remark Code must be provided (may be comprised of either the
         Remittance Advice Remark Code or NCPDP Reject Reason Code.)

M127     Missing patient medical record for this service.

MA100    Missing/incomplete/invalid date of current illness or symptoms

N130     Alert: Consult plan benefit documents for information about restrictions for this service.

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| INNOVA HOSPITAL SAN ANTONIO LP, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 3:12-cv-1607-O |
| BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., et al., | § § § | |
| Defendants. | § § § | |

**AGREED MOTION FOR ENTRY OF PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), plaintiffs Innova Hospital San Antonio, LP and Victory Medical Center Houston, L.P., along with defendants Blue Cross and Blue Shield of Georgia, Inc.; BCBSM, Inc. d/b/a Blue Cross Blue Shield of Minnesota; Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa; Highmark Inc.; Premera Blue Cross; Blue Cross Blue Shield of Mississippi, a Mutual Insurance Company; Usable Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield; Blue Cross and Blue Shield of Tennessee; Blue Cross and Blue Shield of Michigan; Blue Cross and Blue Shield of Alabama; Health Care Service Corporation, a Mutual Legal Reserve Company; Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana; Blue Cross of California; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; CareFirst of Maryland, Inc. (collectively, the "Parties") jointly move the Court to enter the Agreed Protective Order attached hereto as Exhibit 1 to govern the production and dissemination of confidential information in the above-captioned case. In support of this motion, the Parties respectfully state as follows:

1.     To respond to discovery requests, all Parties will have to disclose and produce patient health information ("PHI") as defined by the Standards for Privacy of Individually Identifiable Health Information.  *See* 45 C.F.R. 160–164.  The PHI produced may include, but is not limited to, demographic information, the type of health care services provided to an individual, information on past, present, or future payment for the provision of health care to an individual, medical bills, claim forms, medical records and charts, and other notes, summaries, compilations, extracts, abstracts or oral communications that are based on or derived from PHI. (*See* Ex. 1 ¶ 5).  Patient Identifying Information, as defined by 45 C.F.R. § 164.514(b), also may be produced.  (*See* Ex. 1 ¶ 6).  A provider may disclose PHI after obtaining consent from the patient or providing written notice to the patient that offers an opportunity for the patient to object to the use of PHI.  *See* 45 C.F.R. 164.512.  Here, however, the number of individual patient claims Plaintiffs contend are at issue makes obtaining satisfactory individual consent impractical and unduly burdensome.  When individual consent from or notice to each patient is not feasible, a party may disclose PHI in a judicial proceeding if the parties "have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute."  *Id.*  A "qualified protective order" is one that:

> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

*Id.*; *see Rodriguez v. CHRISTUS Spohn Health Sys.*, 2011 WL 3652189 at *5–6 (S.D. Tex. 2011) (discussing § 164.512).  The Protective Order proposed by the Parties here requires the Parties to use the confidential information "solely for the purpose of prosecuting or defending this Proceeding" and includes provisions for the return or destruction of confidential information at the conclusion of this action.  (Ex. 1 ¶¶ 3, 12, 26).  Thus, the Protective Order will allow

Plaintiffs and Defendants to produce to each other responsive documents containing PHI that are necessary for the Parties to prosecute and defend their claims. *See Rodriguez*, 2011 WL 3652189 at *6 (finding that a qualified protective order protective order would be sufficient if PHI is at issue).

2.      Production of documents and information in this case may also require Parties to disclose commercially or competitively sensitive information. Should such documents or testimony be disclosed publicly, they could give non-parties an unfair competitive advantage vis-à-vis the producing party.

3.      Likewise, because the Parties are likely to have additional business dealings during and after the pendency of this action, the Parties desire that specific categories of certain highly sensitive competitive information be designated "Confidential - Attorney's Eyes Only," so as to protect it from disclosure in ways that could unfairly impact the Parties' future business dealings with each other. *See* Fed. R. Civ. P. 26(c)(1)(G) (stating that the court may require that "commercial information not be revealed or be revealed only in a specified way"); *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 209, n. 27 (5th Cir. 1999) (recognizing that a district court has discretion to restrict discovery); *In re The City of New York*, 607 F.3d 923, 949 (2d Cir. 2010) (noting that a district court can "minimize the effects of disclosure" by tailoring the protective order to the specified circumstances with restrictions such as "making the documents available only on an 'attorneys' eyes only' basis"). The Parties agree that any such designated information would be viewable by in-house counsel and outside attorneys of record, the employees of such outside attorneys, and other persons specifically described in the Agreed Protective Order. (*See* Ex. 1 ¶ 14). The Parties agree that the Attorneys' Eyes Only designation provides adequate protection against the possible risks of disclosure to persons involved in

competitive decision making without imposing an undue hardship on any party.  *See Microsoft Corp. v. Commonwealth Scientific & Indus. Research Org.*, 2009 WL 440608 at *2 (E.D. Tex. 2009) (listing factual circumstances, the risk of inadvertent disclosure, and the hardship the restriction creates among factors courts consider when determining the scope of a protective order); *see, e.g.*, *Paradigm Alliance, Inc. v. Celeritas Technologies, LLC*, 248 F.R.D. 598, 603–04 (D. Kan. 2008) (approving a protective order that included a "confidential attorneys' eyes only" designation for commercially sensitive information that limited access only to outside counsel).

WHEREFORE, the Parties respectfully request the entry of the Agreed Protective Order attached hereto as Exhibit 1.

/s/ Scott Nichols

Lawrence J. Friedman
State Bar No. 07469300
Ernest Leonard
State Bar No. 12208750
Matthew S. Muckleroy
State Bar No. 24066796
FRIEDMAN & FEIGER, L.L.P.
5301 Spring Valley Road, Suite 200
Dallas, Texas 75254
(972) 788-1400 (Telephone)
(972) 788-2667 (Facsimile)
lfriedman@fflawoffice.com
eleonard@fflawoffice.com
mmuckleroy@fflawoffice.com

Charles ("Scott") Nichols
State Bar No. 14994100
STRASBURGER & PRICE, LLP
909 Fannin Street, Suite 2300
Houston, Texas 77010
(713) 951-5600 (Telephone)
(713) 951-5660 (Facsimile)
scott.nichols@strasburger.com

**ATTORNEYS FOR PLAINTIFFS**

/s/ Jonathan M. Herman

Jonathan M. Herman
State Bar No. 24052690
MIDDLEBERG RIDDLE
717 North Harwood, Suite 1600
Dallas, Texas 75201
(214) 220-6300 (Telephone)
(214) 220-6807 (Facsimile)
jherman@midrid.com

**ATTORNEY FOR DEFENDANTS BLUE
CROSS AND BLUE SHIELD OF
ALABAMA, AND LOUISIANA HEALTH
SERVICE & INDEMNITY COMPANY,
D/B/A BLUE CROSS AND BLUE
SHIELD OF LOUISIANA**

/s/ Brian P. Kavanaugh

Brian P. Kavanaugh
IL State Bar No. 6270046
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2015 (Telephone)
(312) 862-2200 (Facsimile)
bkavanaugh@kirkland.com

Dennis J. Keithly
State Bar No. 24050859
YUNG KEITHLY LLP
208 North Market Street
Suite 200
Dallas, Texas 75202
(214) 220-0422 (Telephone)
(214) 220-9932 (Facsimile)
dennis.keithly@yungkeithly.com

**ATTORNEYS FOR DEFENDANT
HEALTH CARE SERVICE CORPORATION**

/s/ Michael A. Yanof

Michael A. Yanof
State Bar No. 24003215
Elaine T. Lenahan
State Bar No. 24008170
THOMPSON COE COUSINS & IRONS
Plaza of the Americas
700 North Pearl Street, 25th Floor
Dallas, Texas 75201-2832
(214) 871-8221 (Telephone)
(214) 871-8209 (Facsimile)
myanof@thompsoncoe.com
elanahan@thompsoncoe.com

**ATTORNEYS FOR DEFENDANT BLUE
CROSS AND BLUE SHIELD OF MICHIGAN**

/s/ Thomas F. A. Hetherington

Thomas F. A. Hetherington
State Bar No. 24007359
Blaire Bruns Johnson
State Bar No. 24064968
EDISON, MCDOWELL & HETHERINGTON LLP
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580 (Telephone)
(713) 337-8840 (Facsimile)
tom.hetherington@emhllp.com
blaire.bruns@emhllp.com

Amy B. Boyea
State Bar No. 24026910
2000 Eeast Lamar Blvd, Suite 590
Arlington, Texas 76006
(817) 303-2140 (Telephone)
(713) 337-8849 (Facsimile)
amy.boyea@emhllp.com

**ATTORNEYS FOR DEFENDANTS
BLUE CROSS AND BLUE SHIELD OF
GEORGIA, INC., BLUE CROSS OF
CALIFORNIA, COMMUNITY
INSURANCE COMPANY, AND
ANTHEM HEALTH PLANS OF
VIRGINIA, INC.**

/s/ John L. Thompson

D. Ronald Reneker
State Bar No. 16770000
John L. Thompson
State Bar No. 90001820
James R. Ray
State Bar No. 24079746
MUNSCH HARDT KOPF & HARR, P.C.
500 North Akard Street, Suite 3800
Dallas, Texas 75201-6659
Tel: (214) 855-7500 (Telephone)
Fax: (214) 855-7584 (Facsimile)
rreneker@munsch.com
jthompson@munsch.com
jray@munsch.com

**ATTORNEYS FOR DEFENDANTS
BCBSM, INC. D/B/A BLUE CROSS AND
BLUE SHIELD OF MINNESOTA,
BLUE CROSS AND BLUE SHIELD OF
MISSISSIPPI, WELLMARK, INC. D/B/A
BLUE CROSS AND BLUE SHIELD OF
IOWA, HIGHMARK, INC., and PREMERA
BLUE CROSS**

/s/ Brian Keith Norman

Brian Keith Norman
State Bar No. 00797161
SHAMOUN & NORMAN LLP
1755 Wittington Place
Suite 200 LB 25
Dallas, Texas 75234
(214) 987-1745 (Telephone)
(214) 521-9033 (Facsimile)
bkn@snlegal.com

Patrick Peter de Gravelles
CareFirst BlueCross BlueShield
840 First Street NE
DC 12-08
Washington, DC 20065
(202) 680-7457 (Telephone)
(202) 680-7620 (Facsimile)
patrick.degravelles@carefirst.com

**ATTORNEYS FOR DEFENDANT
CAREFIRST OF MARYLAND, INC.**

/s/ Amy M. Stewart

Kevin B. Wiggins
State Bar No. 21441600
Camille Stearns Miller
State Bar No. 24030235
Amy M. Stewart
State Bar No. 24060660
WHITE & WIGGINS, LLP
Bank of America Plaza
901 Main Street, #6200
Dallas, Texas 75202
(214) 665-4150 (Telephone)
(214) 665-4160 (Facsimile)
kbwiggins@whitewiggins.com
cstearnsmiller@whitewiggins.com
astewart@whitewiggins.com

**ATTORNEYS FOR DEFENDANT BLUE
CROSS BLUE SHIELD OF TENNESSEE**

/s/ Barton L. Ridley

Barton L. Ridley
State Bar No. 791529
TOUCHSTONE, BERNAYS, JOHNSTONE,
BEALL, SMITH & STOLLENWERCK, L.L.P.
1201 Elm Street, Suite 4040
Dallas, Texas 75270
(214) 741-1166 (Telephone)
(214) 741-7548 (Facsimile)
bart.ridley@tbjbs.com

Michael Naranjo (*Admitted Pro Hac Vice*)
CA State Bar No. 221449
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, California 94104
(415) 984-9847 (Telephone)
(415) 434-4507 (Facsimile)
mnaranjo@foley.com

**ATTORNEYS FOR DEFENDANTS USABLE
MUTUAL INSURANCE COMPANY D/B/A
ARKANSAS BLUE CROSS AND BLUE
SHIELD**

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the foregoing document has been electronically submitted with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties of record electronically pursuant to FED. R. CIV. P. 5(b)(2)(E) on this 1st day of July, 2014.


       /s/ Brian P. Kavanaugh


## CERTIFICATE OF CONFERENCE

  The undersigned hereby certifies Counsel for Plaintiffs and Counsel for Defendants have conferred and agreed to this Motion for Entry of Agreed Protective Order.


       /s/ Brian P. Kavanaugh

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| INNOVA HOSPITAL SAN ANTONIO LP, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:12-cv-1607-O |
| BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., et al., | § § § | |
| Defendants. | § | |

**STIPULATION AND AGREED F.R.E. 502(d) AND PROTECTIVE ORDER**

Before the Court is the Parties' Agreed Motion for Entry of Stipulation and Agreed F.R.E. 502(d) and Protective Order ("Protective Order"), filed July, 1 2014. The Court determines that the motion should be, and is hereby **granted**. Accordingly, pursuant to Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 502, plaintiffs Innova Hospital San Antonio, LP and Victory Medical Center Houston, L.P., along with defendants Blue Cross and Blue Shield of Georgia, Inc.; BCBSM, Inc. d/b/a Blue Cross Blue Shield of Minnesota; Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa; Highmark Inc.; Premera Blue Cross; Blue Cross Blue Shield of Mississippi, a Mutual Insurance Company; Usable Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield; Blue Cross and Blue Shield of Tennessee; Blue Cross and Blue Shield of Michigan; Blue Cross and Blue Shield of Alabama; Health Care Service Corporation, a Mutual Legal Reserve Company; Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana; Blue Cross of California; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; CareFirst of Maryland, Inc. (collectively, the "Parties") agree that discovery in the above-captioned lawsuit

("Proceeding") shall be governed by the following provisions. For purposes of this Protective Order, the term "trial" as used herein shall refer to the final formal hearing of the Parties' claims and defenses before the Court. The terms of this Protective Order are as follows:

1.     **Applicability**. This Protective Order is applicable to the Parties, any additional parties joined in this action, and any third parties required to respond to discovery in this matter or provide initial disclosures, for the sole purpose of facilitating discovery and disclosures in the Proceeding.

2.     **Non-waiver.** The production of documents and information shall not constitute a waiver in this Proceeding, or any other litigation or matter, of any privilege (including, without limitation, the attorney-client privilege and the attorney work product privilege) applicable to the produced materials or for any other privileged or immune materials containing the same or similar subject matter. This Protective Order encompasses an Order under Federal Rule of Evidence 502(d) that any privilege that may have been raised in documents produced in this Proceeding is not waived as a result of disclosure of those documents in connection with this Proceeding, and this Protective Order governs all persons or entities in all state or federal proceedings, whether or not they were parties to this Proceeding. The fact of production of privileged information or documents by any producing Party in this Proceeding shall not be used as a basis for arguing that a claim of privilege or work product has been waived in any other proceeding. Without limiting the foregoing, this Protective Order shall not affect the Parties' legal rights to assert privilege claims over documents in any other proceeding.

3.     **Scope of Use.** All "Confidential" and "Confidential—Attorneys' Eyes Only" information (collectively "Confidential Material") produced or exchanged in the course of this Proceeding shall be used solely for the purpose of prosecuting or defending this Proceeding,

including mediation, trial preparation, trial, and appeal, and for no other purpose whatsoever and shall not be disclosed to any person except in accordance with the terms of this Protective Order.

4.     **Designation of Information.**   A Party may designate any documents, testimony, or other information furnished or disclosed to or by any other Party or its counsel (meaning legal counsel/attorney, throughout this Protective Order) during discovery, in disclosures, or in trial as "Confidential" or "Confidential—Attorney's Eyes Only" solely in the manner set forth in this Protective Order.  In designating Confidential Material, a Party will make such designation <u>only</u> as to that information that it in good faith believes is confidential information.  Confidential Material is only defined as information set forth and defined in Paragraphs 5, 6, 7, 9, 10, and 11, below.  Information or material which is available to the public (not including the particular patients whose information is being disclosed), including catalogues, advertising materials, and the like, shall not be classified as Confidential Material.  A pleading shall not be wholesale designated as "Confidential" or "Confidential—Attorney's Eyes Only," or filed under seal, because it contains Confidential Material.  Rather, the filer of such pleading must file any such information deemed Confidential Material as an Exhibit, which may be filed under seal as described in Paragraph 10 herein.  If such pleading references or otherwise discuses such Confidential Material in a manner which would reveal the content of information otherwise sought to be protected as Confidential Material, only that discussion of Confidential Material may be redacted from such pleading.

5.     **HIPAA Information.**     The Parties desire to ensure the privacy of patient/insured/member medical records, patient/insured/member claims information, and other information that the Parties have determined might contain sensitive personal information, including Protected Health Information, Individually Identifiable Information, and any other

protected information, as defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. parts 160 and 164, and agree that any such information may be designated as "Confidential."

    **a.**     **Protected Health Information.** Protected Health Information, as used herein, shall have the same scope and definition as set forth in 45 C.F.R. § 160.103. Without limiting the generality of the foregoing, Protected Health Information includes, but is not limited to, health information, including demographic information, relating to: past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual, which identifies or reasonably could be expected to identify the individual. It also includes, but is not limited to: medical bills; claims forms; charges sheets; medical records; medical charts; test results; notes; dictation; invoices; itemized billing statements; remittance advice forms; explanation of benefits; checks; notices; and requests; and includes all notes, summaries, compilations, extracts, abstracts, or oral communications that are based on or derived from patient health information.

    **b.**     **Individually Identifiable Information.** Individually Identifiable Information, as used herein, means information referred to and identified in 45 C.F.R. §164.514(b), including, but not limited to: name; address; names of relatives; name of employers; all elements of dates; telephone numbers; fax numbers; electronic mail addresses; social security numbers; medical record numbers; health plan beneficiary numbers; account numbers; certificate/license numbers; Internet Protocol (IP) address numbers; biometric identifiers; full face photographic images; or any other unique identifying numbers, characteristic, or code of any patient.

c.      **Covered Entities.**  Additionally, the Parties and their attorneys and any future

parties and their attorneys in this Proceeding, and any "covered entities," as that term is

defined in 45 C.F.R. § 160.103, are hereby authorized to receive, subpoena, disclose, and

transmit Confidential Material to the extent and subject to the conditions outlined herein.

6.      **"Confidential" Designation.**  A Party may only designate as "Confidential" any

document or any portion of a document, and any other thing, material, testimony, or other

information, that it reasonably and in good faith believes contains or reflects: (a) proprietary,

business sensitive, or confidential information; (b) information that should otherwise be subject

to confidential treatment pursuant to applicable federal and/or state law; or (c) Patient Health

Information, Patient Identifying Information, or other HIPAA Information further defined in

Paragraphs 5, 5a, and 5b above.

7.      **"Confidential—Attorney's Eyes Only" Designation.**  A Party may designate as

"Confidential—Attorney's Eyes Only" any document or portion of a document, and any other

thing, material, testimony, or other information, including trade secrets, that it reasonably and in

good faith believes is of such a commercially or competitively sensitive nature that disclosure to

persons other than those specified herein in Paragraph 14 could reasonably be expected to result

in injury to that Party.

8.      **Time Period for Protection.**  Except as otherwise provided below, any

information, document, data, thing, deposition testimony, or interrogatory answer produced,

given, or served pursuant to discovery requests in this Proceeding and designated by the

producing Party as Confidential Material, or any information contained in or derived from any of

the foregoing Confidential Material, shall be subject to the provisions of this Protective Order,

including after the termination of this Proceeding, until further Order of this Court.

9.    **Document Production and Exhibits.** Confidential Material shall be designated as "Confidential" or "Confidential—Attorney's Eyes Only" by including a legend of "Confidential" or "Confidential—Attorney's Eyes Only" on each page thereof as to which confidentiality is claimed.  Any mark made to identify a document as "Confidential" or "Confidential—Attorney's Eyes Only" shall be made so as not to obscure any of the Confidential Material's content.  With respect to any Confidential Material designated "Confidential" or "Confidential—Attorney's Eyes Only" that is not produced in paper form (such as flash drives, compact discs, DVDs, magnetic media, and other Confidential Material not produced in paper form) and that is not susceptible to the imprinting of a stamp signifying its confidential nature, the producing Party shall, to the extent practicable, produce such Confidential Material with a cover labeled "Confidential" or "Confidential—Attorney's Eyes Only" and shall inform all counsel in writing of the "Confidential" or "Confidential—Attorney's Eyes Only" designation of such Confidential Material at the time it is produced.

10.    **Documents Generated During Suit.** All pleadings, motions, memoranda, briefs, deposition transcripts, discovery requests and responses, exhibits, and other documents that produce, paraphrase, summarize, or otherwise contain any information designated as "Confidential" or "Confidential—Attorney's Eyes Only" by a Party, if filed with the Court, shall be filed pursuant to the rules governing sealed documents, as set forth in CM/ECF procedures of the United States District Court for the Northern District of Texas.  Any courtesy copies served on the Court shall be filed in an envelope labeled with the caption of the suit, a description of the contents of the envelope, the words "Confidential" or "Confidential—Attorney's Eyes Only," and the following statement:

> "THIS ENVELOPE CONTAINS INFORMATION SUBJECT TO THE AGREED PROTECTIVE ORDER ENTERED BY THE PARTIES IN THIS

LITIGATION, AND IS NOT TO BE OPENED NOR THE CONTENTS THEREOF DISPLAYED OR REVEALED EXCEPT BY THE COURT OR BY AGREEMENT OF THE PARTIES WHOSE CONFIDENTIAL INFORMATION IS CONTAINED WITHIN."

If any request to seal is made and not granted in whole or in part, the Confidential Material at issue shall be filed in whatever manner the Court directs.

11. **Depositions.**  Any Party may designate a deposition or portion thereof as "Confidential" or "Confidential—Attorney's Eyes Only" by making such designation on the record during the deposition or by denominating by page and line those portions of the deposition which are to be considered "Confidential" or "Confidential—Attorney's Eyes Only" within thirty (30) business days of receiving the transcript and exhibits and so informing all other Parties of such designation.  Until the 30-day period to designate deposition testimony as "Confidential" or "Confidential—Attorney's Eyes Only" has passed, the deposition transcript shall be treated as "Confidential—Attorney's Eyes Only."  Notwithstanding the above, persons attending depositions by agreement of the Parties must leave the room before any discussion of any Confidential Material, unless the person is entitled to review the Confidential Material under the applicable provisions of Paragraphs 13 and 14 of this Protective Order.

12. **Restrictions on Use of Confidential Material.**  Except as agreed to by the designating Party or its counsel or as otherwise provided herein, information designated as "Confidential" or "Confidential—Attorney's Eyes Only:"

(a)     Shall be maintained in confidence by the counsel to which it is furnished;

(b)     May be disclosed by such counsel only to authorized persons entitled to access thereto under Paragraphs 13 and 14 below;

(c)     May be used by such counsel and the authorized person to whom it is disclosed only for the purposes permitted under Paragraph 3 above and for no other purpose; and

(d)     May be photocopied or reproduced only as reasonably necessary for this Proceeding.

Nothing herein shall prevent disclosure beyond the terms of this Protective Order if the Party designating the information as "Confidential" or "Confidential—Attorney's Eyes Only" consents in writing to such disclosure, or if the Court, after Notice to all affected Parties, orders such disclosure.    Nor shall anything herein prevent any counsel of record from utilizing "Confidential" or "Confidential—Attorney's Eyes Only" information in the examination or cross-examination of any person who is identified or indicated on the documents as being an author, source, or recipient of the Confidential Material, or the designated representative of any Party who testifies on a subject matter that includes Confidential Material, irrespective of which Party produced such information.

**13.     Authorized Users of "Confidential Materials."**   Except as agreed to by the designating Party or its counsel or as otherwise provided herein, materials designated as "Confidential" subject to this Protective Order, or extracts or summaries therefrom, shall not be given or shown to any person except the following:

(a)     In-house counsel and outside counsel of record for any Party engaged in the litigation of this Proceeding and the regular employees of such outside counsel to whom it is necessary that the material be shown for purposes of this Proceeding;

(b)     Any individual Party and employees of a corporate Party actively engaged in assisting that Party's counsel in the litigation of this Proceeding, to the extent

reasonably necessary to enable the counsel for that Party to render professional services in this Proceeding;

(c) Persons not owners, officers, directors, managers, shareholders, or employees of any Party who are expressly retained to assist such Party's counsel ("Retaining Counsel") in the preparation of this Proceeding for trial including, but not limited to, consulting and testifying experts, independent auditors, accountants, statisticians, economists, and other experts, and the employees of such persons ("Outside Experts"), after such Outside Expert has signed and delivered to Retaining Counsel a statement in the form annexed hereto as Exhibit A;

(d) Any Party's outside copy/document preparation service, which includes any e-discovery consultants and trial consultants;

(e) Any mediator;

(f) The Court, other court officials (including court reporters) and the trier of fact, pursuant to a sealing order; and

(g) Any other person who subsequently is designated by (i) written agreement of all the Parties after a request by one of them, or (ii) by order of the Court upon motion by a Party, after notice to all the Parties.

No person allowed to view materials designated as "Confidential" shall use any such materials for any purpose except as needed solely in connection with or to assist in the prosecution or defense of the claims between the Parties in this Proceeding, and each person shall make the best efforts necessary to protect the confidentiality of the material.

 **14. Authorized Users of "Confidential—Attorney's Eyes Only" Material.** Except as agreed to by the designating Party or its counsel or as otherwise provided herein, materials

designated as "Confidential—Attorney's Eyes Only" subject to this Protective Order, or extracts or summaries therefrom, shall not be given or shown to any person except the following:

> (a)     In-house counsel and outside counsel of record for any Party engaged in the litigation of this Proceeding and the regular employees of such outside counsel to whom it is necessary that the material be shown for purposes of this Proceeding.

> (b)     Those persons listed in Paragraphs 13(c), (d), (e), (f) and (g) above.

No person allowed to view materials designated as "Confidential—Attorney's Eyes Only" shall use any such materials for any purpose except as needed solely in connection with or to assist in the prosecution or defense of the claims between the Parties in this Proceeding, and each person shall make the best efforts necessary to protect the confidentiality of the material. Nothing in the Protective Order is intended to prevent a Party or its employees from reviewing the Party's own "Confidential" or "Confidential—Attorney's Eyes Only" material.

**15.    Disclosure to Unauthorized Persons.** If counsel wishes to disclose Confidential Material to any person not designated in Paragraphs 13 or 14 above, they must proceed in the following manner: the names of the persons to whom the Confidential Material is to be disclosed and a description of the Confidential Material to be disclosed to such persons shall be provided in writing to counsel for the producing Party fourteen (14) days in advance of disclosure to afford counsel an opportunity to object to disclosure. If no objection is made within the 14-day period, disclosure to such named persons may be made after the expiration of such 14-day period. If an objection is made within the 14-day period, the Party proposing the disclosure must seek an Order from the Court to allow the proposed disclosure and such Confidential Material shall not be disclosed pending a decision by the Court on such motion. Any person who becomes authorized to receive Confidential Material pursuant to this Paragraph

(whether such authorization arises from the lack of an objection or from the Court's ruling on a motion for disclosure) shall, unless the Court directs otherwise, prior to the receipt of Confidential Material, execute and deliver to counsel a statement in the form annexed hereto as Exhibit A. Disclosures made to all persons to whom disclosures are permitted hereunder shall be made subject to and in accordance with the terms of this Protective Order.

16. **Subpoena or Other Demand for Production.** If a Party or its counsel receives a discovery request, subpoena, or order of any court or other tribunal in another case or proceeding for materials designated by another Party as "Confidential" or "Confidential—Attorney's Eyes Only," the Party receiving the request for such materials shall: (a) within a reasonable time, no later than ten (10) days after counsel's receipt of such request or demand and prior to responding to the request or demand, notify counsel for the Party whose material is sought, in writing and by providing a copy of the request or demand; (b) provide a reasonable time for the Party whose material is sought to seek to protect its material from disclosure prior to producing or disclosing the requested material; and (c) provided that the Party whose material is sought makes a timely motion or other application for relief from the request or demand in the appropriate forum, shall not produce or disclose the requested material without written consent of the Party whose material is sought or until ordered by a court of competent jurisdiction to do so.

17. **Challenging Designation.** If any Party reasonably and in good faith believes that any Confidential Material has been misclassified under this Protective Order, is not properly subject to the confidentiality designation assigned to it, or should not be subject to this Protective Order, that Party must notify the producing Party in writing and provide a description of the Confidential Material which the objecting Party believes should be freed from the constraints of this Protective Order, and serve copies of such notice to lead counsel for all other Parties herein.

Counsel shall confer in good faith in an effort to resolve any dispute concerning such designation. If the objection cannot be resolved by agreement within twenty (20) days from the date of service of the written objection, the producing Party must make a motion to the Court for an order confirming that the information at issue is subject to this Protective Order. The Party asserting the "Confidential" or "Confidential—Attorney's Eyes Only" designation shall have the burden of showing why such information is entitled to confidential treatment. If such a motion is timely filed on or before the 20th day after the date of service of the written objection, the protection afforded by the Protective Order shall continue until the Court makes a decision on the motion. Failure of the producing Party to file a motion within the 20-day period shall be deemed a waiver of the designation of the challenged material.

18. **Use of Confidential Material at Trial.** In the event that any material designated as "Confidential" or "Confidential—Attorney's Eyes Only" is used at trial, pre-trial conference, or in any hearing in this Proceeding, it shall not lose its confidential status through such use, and the Party using such material shall take all reasonable steps to maintain its confidentiality during such use, including without limitation, requesting that the Court seal any transcript with respect to such trial, pre-trial conference, or hearing. At least thirty (30) days prior to the trial of this Proceeding, the Parties shall confer, and if necessary, submit any motions to the Court to vary any terms of this Protective Order with respect to use or treatment at trial of material designated as "Confidential" or "Confidential—Attorney's Eyes Only."

19. **No Waiver.** This Protective Order shall not be deemed a waiver of:

(a)     Any Party's right to object to any discovery requests on any ground;

(b)     Any Party's right to seek an order compelling discovery with respect to any discovery request;

(c)     Any Party's right to object to the admission of any evidence on any ground;

(d)     Any Party's right to use its own documents and its own "Confidential" or "Confidential—Attorney's Eyes Only" material in its sole and complete discretion; or

(e)     The status of any material as a trade secret.

20.     **Retroactive Designation and Inadvertent Disclosure.** Documents previously produced shall be retroactively designated by notice in writing of the designated confidentiality class of each document (including, if possible, by Bates number). The inadvertent or unintentional designation or production of documents containing, or other disclosure of, confidential information without being designated as "Confidential" or "Confidential— Attorney's Eyes Only" at the time of designation, production, or disclosure shall not be deemed a waiver in whole or in part of a Party's claim of confidentiality or secrecy, either as to the specific information or as to any other information relating thereto or on the same or related subject matter. Any inadvertent designation or disclosure shall be corrected as soon as reasonably possible after the designating Party becomes aware of the error.

21.     **Inadvertent Production of Privileged Materials**. In the event that a Party asserts that it inadvertently failed to designate any production materials or other information as privileged or work product materials, it shall promptly notify all Parties to whom such privileged material was produced or disclosed of the producing Party's intent to assert a claim of privilege or work product over such materials. Upon such notice:

(a)     If the receiving Party intends to challenge the designation of the document(s) as privileged material, it shall promptly sequester all copies of the document(s), pending Court resolution of the challenge. Following notice by the

producing Party, the receiving Party: (i) must not use or disclose the privileged material until the claim is resolved; and (ii) must take reasonable steps to retrieve the privileged material if the Party disclosed it before being notified. If the receiving Party intends to challenge the designation of the document(s), it shall move the Court for relief within ten (10) business days following notification by the producing Party.

(b) If the receiving Party does not intend to challenge the designation of the document(s) as privileged material, the receiving Party shall: (i) take reasonable steps to retrieve the privileged material if it disclosed or disseminated such information before being notified; and (ii) promptly return or certify destruction of the privileged material, including all copies. For purposes of this provision, return or certification of destruction of the material shall be considered prompt if it occurs within seven (7) days of notification.

**22. Re-production of Electronic Media Containing Privileged Material.** Where the Parties agree, or the Court orders, that inadvertently produced material is protected by the attorney-client, work product, or other privilege, and such material was originally produced in electronic format on media containing production materials, the producing Party shall promptly provide replacement production media, omitting the privileged material, to the receiving Party.

**23. Identification of Inadvertently Disclosed Privileged Material by the Receiving Party.** Nothing in this Protective Order shall relieve counsel for any receiving Party of any existing duty or obligation to return, and not to review, any privileged or work product materials without being requested by the producing Party to do so. Rather, in the event a receiving Party becomes aware that it is in possession of what appears to be inadvertently produced privileged material, then the receiving Party shall immediately: (i) cease any further

14

review of that material; and (ii) notify the producing Party of the apparent inadvertent production, requesting whether the producing Party intended for the material to be produced.  In the event the producing Party confirms the inadvertent production of the privileged material, the receiving Party shall: (i) take reasonable steps to retrieve the privileged material from any persons to whom it disclosed or distributed such material; and (ii) promptly return or certify destruction of the privileged material, including all copies.  For purposes of this provision, return or certification of destruction of the material shall be considered prompt if it occurs within seven (7) days of notification.

24.    **Responsibility of Counsel.**  Counsel for the Parties to whom "Confidential" or "Confidential—Attorney's Eyes Only" material has been furnished shall be responsible for restricting disclosure in accordance with the provisions of this Protective Order and for securing execution of and retaining the statement attached hereto as Exhibit A as and when required under the provisions of this Protective Order.

25.    **Modification or Amendment of Agreed Order.**  This Protective Order may be modified or amended either by written agreement of the Parties or by order of the Court upon good cause shown.  No oral waivers of the terms of this Protective Order shall be permitted between the Parties.  Nothing herein shall prevent the Court from *sua sponte* altering the provisions of this Protective Order.

26.    **Conclusion of Proceeding.**  The provisions of this Protective Order shall continue in effect with respect to any material designated as "Confidential" or "Confidential— Attorney's Eyes Only" until expressly released by the producing Party of such material, and such effectiveness shall survive the final determination of this action.  Within sixty (60) days of the final determination of this action, all material designated as "Confidential" or "Confidential—

15

Attorney's Eyes Only," including all copies, derivations, and summaries thereof, shall be either: (a) returned to the disclosing party; or (b) destroyed or deleted, with a written certification provided to the disclosing party. This Paragraph includes the return or destruction or deletion of documents provided to any authorized person, including outside experts. However, counsel of record are permitted to retain a copy of all pleadings and attorney work product, which work product may contain "Confidential" or "Confidential—Attorney's Eyes Only" material. For purposes of this Protective Order, the "final determination of this action" shall be deemed to be the later of: (i) full settlement of all claims asserted in this Proceeding; (ii) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials and reviews, if any, of this Proceeding; or (iii) the expiration of all time limits under federal law for the filing of or application for all appeals, rehearings, remands, trials or reviews of this Proceeding, including the time limits for the filing of any motions or applications for extension of time pursuant to applicable law. This Court retains and shall have continuing jurisdiction over the Parties and recipients of Confidential Material for enforcement of the provisions of this Protective Order following termination of this Proceeding.


**It is so ordered** this ___ day of _____, 2014.


_____

/s/ Scott Nichols

Lawrence J. Friedman
State Bar No. 07469300
Ernest Leonard
State Bar No. 12208750
Matthew S. Muckleroy
State Bar No. 24066796
FRIEDMAN & FEIGER, L.L.P.
5301 Spring Valley Road, Suite 200
Dallas, Texas 75254
(972) 788-1400 (Telephone)
(972) 788-2667 (Facsimile)
lfriedman@fflawoffice.com
eleonard@fflawoffice.com
mmuckleroy@fflawoffice.com

Charles ("Scott") Nichols
State Bar No. 14994100
STRASBURGER & PRICE, LLP
909 Fannin Street, Suite 2300
Houston, Texas 77010
(713) 951-5600 (Telephone)
(713) 951-5660 (Facsimile)
scott.nichols@strasburger.com

**ATTORNEYS FOR PLAINTIFFS**

/s/ Jonathan M. Herman

Jonathan M. Herman
State Bar No. 24052690
MIDDLEBERG RIDDLE
717 North Harwood, Suite 1600
Dallas, Texas 75201
(214) 220-6300 (Telephone)
(214) 220-6807 (Facsimile)
jherman@midrid.com

**ATTORNEY FOR DEFENDANTS BLUE
CROSS AND BLUE SHIELD OF
ALABAMA, AND LOUISIANA HEALTH
SERVICE & INDEMNITY COMPANY,
D/B/A BLUE CROSS AND BLUE
SHIELD OF LOUISIANA**

/s/ Brian P. Kavanaugh

Brian P. Kavanaugh
IL State Bar No. 6270046
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2015 (Telephone)
(312) 862-2200 (Facsimile)
bkavanaugh@kirkland.com

Dennis J. Keithly
State Bar No. 24050859
YUNG KEITHLY LLP
208 North Market Street
Suite 200
Dallas, Texas 75202
(214) 220-0422 (Telephone)
(214) 220-9932 (Facsimile)
dennis.keithly@yungkeithly.com

**ATTORNEYS FOR DEFENDANT
HEALTH CARE SERVICE CORPORATION**

/s/ Michael A. Yanof

Michael A. Yanof
State Bar No. 24003215
Elaine T. Lenahan
State Bar No. 24008170
THOMPSON COE COUSINS & IRONS
Plaza of the Americas
700 North Pearl Street, 25th Floor
Dallas, Texas 75201-2832
(214) 871-8221 (Telephone)
(214) 871-8209 (Facsimile)
myanof@thompsoncoe.com
elanahan@thompsoncoe.com

**ATTORNEYS FOR DEFENDANT BLUE
CROSS AND BLUE SHIELD OF MICHIGAN**

/s/ Thomas F. A. Hetherington

Thomas F. A. Hetherington
State Bar No. 24007359
Blaire Bruns Johnson
State Bar No. 24064968
EDISON, MCDOWELL & HETHERINGTON LLP
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580 (Telephone)
(713) 337-8840 (Facsimile)
tom.hetherington@emhllp.com
blaire.bruns@emhllp.com

Amy B. Boyea
State Bar No. 24026910
2000 Eeast Lamar Blvd, Suite 590
Arlington, Texas 76006
(817) 303-2140 (Telephone)
(713) 337-8849 (Facsimile)
amy.boyea@emhllp.com

**ATTORNEYS FOR DEFENDANTS
BLUE CROSS AND BLUE SHIELD OF
GEORGIA, INC., BLUE CROSS OF
CALIFORNIA, COMMUNITY
INSURANCE COMPANY, AND
ANTHEM HEALTH PLANS OF
VIRGINIA, INC.**

/s/ John L. Thompson

D. Ronald Reneker
State Bar No. 16770000
John L. Thompson
State Bar No. 90001820
James R. Ray
State Bar No. 24079746
MUNSCH HARDT KOPF & HARR, P.C.
500 North Akard Street, Suite 3800
Dallas, Texas 75201-6659
Tel: (214) 855-7500 (Telephone)
Fax: (214) 855-7584 (Facsimile)
rreneker@munsch.com
jthompson@munsch.com
jray@munsch.com

**ATTORNEYS FOR DEFENDANTS
BCBSM, INC. D/B/A BLUE CROSS AND
BLUE SHIELD OF MINNESOTA,
BLUE CROSS AND BLUE SHIELD OF
MISSISSIPPI, WELLMARK, INC. D/B/A
BLUE CROSS AND BLUE SHIELD OF
IOWA, HIGHMARK, INC., and PREMERA
BLUE CROSS**

/s/ Brian Keith Norman

Brian Keith Norman
State Bar No. 00797161
SHAMOUN & NORMAN LLP
1755 Wittington Place
Suite 200 LB 25
Dallas, Texas 75234
(214) 987-1745 (Telephone)
(214) 521-9033 (Facsimile)
bkn@snlegal.com

Patrick Peter de Gravelles
CareFirst BlueCross BlueShield
840 First Street NE
DC 12-08
Washington, DC 20065
(202) 680-7457 (Telephone)
(202) 680-7620 (Facsimile)
patrick.degravelles@carefirst.com

**ATTORNEYS FOR DEFENDANT
CAREFIRST OF MARYLAND, INC.**


/s/ Amy M. Stewart

Kevin B. Wiggins
State Bar No. 21441600
Camille Stearns Miller
State Bar No. 24030235
Amy M. Stewart
State Bar No. 24060660
WHITE & WIGGINS, LLP
Bank of America Plaza
901 Main Street, #6200
Dallas, Texas 75202
(214) 665-4150 (Telephone)
(214) 665-4160 (Facsimile)
kbwiggins@whitewiggins.com
cstearnsmiller@whitewiggins.com
astewart@whitewiggins.com

**ATTORNEYS FOR DEFENDANT BLUE
CROSS BLUE SHIELD OF TENNESSEE**

/s/ Barton L. Ridley

Barton L. Ridley
State Bar No. 791529
TOUCHSTONE, BERNAYS, JOHNSTONE,
BEALL, SMITH & STOLLENWERCK, L.L.P.
1201 Elm Street, Suite 4040
Dallas, Texas 75270
(214) 741-1166 (Telephone)
(214) 741-7548 (Facsimile)
bart.ridley@tbjbs.com

Michael Naranjo (*Admitted Pro Hac Vice*)
CA State Bar No. 221449
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, California 94104
(415) 984-9847 (Telephone)
(415) 434-4507 (Facsimile)
mnaranjo@foley.com

**ATTORNEYS FOR DEFENDANTS USABLE
MUTUAL INSURANCE COMPANY D/B/A
ARKANSAS BLUE CROSS AND BLUE
SHIELD**

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2014, a true and correct copy of the foregoing was electronically filed with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to all interested parties.


 /s/  Brian P. Kavanaugh

## EXHIBIT A - AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

1.  I am familiar with and agree to be bound by the terms of the Stipulation and Agreed F.R.E. 502(d) and Protective Order in No. 3:12-cv-1607-O, *Innova Hospital San Antonio, L.P., et al. v. Blue Cross and Blue Shield of Georgia, Inc., et al.,* pending in the Northern District of Texas, Dallas Division.

2.  I will only make such copies of or notes concerning documents designated "Confidential" or "Confidential—Attorney's Eyes Only" as are necessary to enable me to render the assistance required in connection with this litigation, and, all such notes and copies shall be preserved in a separate file maintained as "Confidential" and marked for disposal or destruction upon completion of this litigation.  Upon the final determination of this action, I shall promptly destroy all "Confidential" or "Confidential—Attorney's Eyes Only" materials provided to me as well as any notes or derivations thereof.

3.  I will not intentionally reveal the contents of "Confidential" or "Confidential—Attorney's Eyes Only" material to any unauthorized person.  I will not intentionally use "Confidential" or "Confidential—Attorney's Eyes Only" material for any purpose other than the prosecution or defense of claims in this action.

4.  I consent to the jurisdiction of the United States District Court for the Northern District of Texas (without any time limit) for the purpose of enforcing the terms of the Protective Order.

DATED this ___ day of _____, 20__.

BY:     _____
        (Signature)


        _____
        (Printed Name)